Mr." Chief Justice Marshall
 

 delivered the opinion of the Court, and after státing the facts, proceeded as follows:
 

 On the first branch of the question certified from the Circuit Court,, no doubt can be entertained. The defendants having received the cargo of the Henry Clay, and sold it, are accountable for the proceeds, although the cargo should be considered as the property, of the plaintiffs. Whether the defendants are liable for the moneys actually advanced in Amsterdam, or for the net amount of sales in Baltimore, considering the goods as the property of the plaintiff, .still they are liable for something; and, of consequence, the action is sustainable.
 

 
 *252
 
 In deciding on the second branch of the instructions which were required, it becomes material to examine the orders which were carried out by the Henry Clay on her voyage from Baltimore to Amsterdam, contained in the letters of the 25th of April, the one to the plaintiffs, the other to the master.
 

 It is admitted, that no freight to Batavia could be obtained, and that the vessel could not be sold at the limited price; consequently, the only deviation from orders alleged by the defendants is, the purchase of the Russian goods for the return cargo at Amsterdam, instead of sending the Hénry Clay to St. Pe-tersburg.
 

 That the orders of the defendants to send their ship to St. Petersburg, in the eveht which had occurred, were positive; and that no authority was ¿iven to purchase her return cargo at Amsterdam, under any circumstances, are too apparent for controversy. That this purchase, thus made without authority, whether with, or without, the consent and concurrence of the master, must have been made at the risk of the plaintiffs, is also too clear for argument. But the liability of the plaintiffs for any loss which the defendants may have sustained by the breaking up of the voyage to St. Petersburg, depends on the question, whether the control of that voyage was committed to them, or ta the master. In considering this question, it is proper to take into view all the instructions which were given, and to compare the two letters written by the defendants with each other.
 

 In the .commencement of the letter written by
 
 *253
 
 Mr. M‘Kim, on the part of the defendants, he says, « I have been directed by the owners to consign the ship to your house, also, that part of the cargo which I consider belongs to the owners jointly.”
 

 Whether this consignment was limited to the transactions m Amsterdam, or extended to any subsequent voyage in which the Henry Clay might be directed to engage, depends on other parts of the letter.
 

 Mr. M'Kim then proceeds to direct, that certain parts, of the outward cargo should “remain as a fund for the purpose of loading the ship, if she should proceed to St. Petersburg.”
 

 These orders are precise and-explicit, with respect to the funds which are to remain in the hands of the plaintiffs for the purchase of the cargo in St. Peters-burg, but are silent respecting any agency of the plaintiffs in making that purchase.
 

 After communicating the desire of the defendants, that a freight should be obtained for Batavia, the letter proceeds to say, “ And secondly, if the ship can be sold for 8,000 pounds sterling, you will dispose of her rather than send her to St. Petersburg.”
 

 This part of the letter may indicate, that in some other part of it, might be found an express order to send the Henry Clay to St. Petersburg, if the primary objects of the defendants should be unattainable, but. does not in itself amount to such express order. The writer does not say, “ we request you, if the vessel ..cannot be sold, to send her to St. Petersburg;” but, “ you will dispose of her, rather than send her to St. Petersburg;” as if there were some authority
 
 *254
 
 not communicated by these words, to which they have allusion. There is no such authority, unless it be implied in the general consignment of the vessel.
 

 That consignment is completely satisfied by the agency which was to be exercised in Amsterdam. If it was designed to extend it to the eventual voyage to St.. Petersburg, the Messrs. Willinks would naturally expect to find some instructions respecting that voyage; respecting the articles of which the cargo was to consist, and their conduct in the purchase of -them. But they could find no such instructions. In a subsequent part of the letter, Mr. M(Kim states the. estimated value of the cargo he had ordered, and is explicit in his request, that they would advance the necessary funds for laying it in, should those placed in their hands be insufficient; but he is entirely silent with respect to their haying any other agency in the voyage.
 

 It was impossible for these gentlemen to read this letter without, at least, doubting their power to interfere farther,. with respect to the voyage to St. Petersburg, than to advance the money which might be required for the cargo to be purchased at that place. The letter contains all the information, and all the power which was necessary for this purpose, but contains neither information nor power, for any other purpose.
 

 It was natural for the Messrs. Willinks to require farther information on this subject, and to seek it from the master. He could have no motive for withholding his .letter of instructions from them, and in that they would find, that the management of the
 
 *255
 
 voyage was committed to him, and. that the utmost confidence was. reposed in his intelligence.and integrity. “ I hope,” says M‘Kim, “ that every exertion will be • made to .proceed, to St. Petersburg immediately, if you do not go to Batavia, and the ship cannot be. sold.” These exertions were to be made by the master; he was to proceed, immediately to St. Petersburg’; and as no reference is here made to the Messrs. Willibks, the .fair inference seems to he, that he was.expected to proceed, not in. consequence of any. orders he should receive from them, but in consequence'.óf the orders he had received from the owners. “ The same industry;’.’ he is told, must be Used . to get .away-from . St. Petersburg.” The letter then adds; “ the owners must also depend on your attention at St.' Petersburg, ’ that the hemp is. good that you, receive. ”
 

 But the part of .the letter which seems to be conclusive on this point, is that Which relates to the consignment :of the ship, “ Thé-Messrs. Willinks,” says'the writer, “ will of course endeavour to consign the ship to a friend of theirs at. St. Petersburg, but we have great confidence in a house recommended by Mr. Cumberland D. Williams, Messrs. Meyer and Buxner, and we wish you to consign the ship to them,’-’
 

 The owners then did not suppose, that they'had empowered the plaintiffs to order tíre ship to St; Petersburg. They did not suppose, that their original consignment of the Henry Clay tb the Messrs. Willinks, implied a control over her after the trans-aqtions. at Amsterdam should be terminated. Had
 
 *256
 
 such a control existed, those gentlemen would not have consigned her to one of their friends. But ^ese w°rds show conclusively, that the defendants themselves directed the consignment of the ship from Amsterdam to St. Petersburg, and in executing their orders, the master is not merely directed to proceed without consulting the Messrs. Willinks, he is directed to disregard their advice should it be offered.
 

 The plaintiffs could not compare this letter with thataddressed to themselves, without perceiving that, with respect to the voyage to St. Petersburg, every order was given directly to the master without reference to them, farther than to show, that their interference, with respect to the consignment of the ship, was to be disregarded; and that their agency was confined to advancing the necessary funds for the purchase of the return cargo.
 

 Both the master and the Messrs. Willinks appear to have acted on this construction of their respective powers. The correspondence between them contains no indication of an opinion in either, that the voyage to St. Petersburg depended on the orders of those gentlemen. The master does not require their orders, but asks their advice ; they do not attempt to order, they only advise. This advice may have been dictated by their best judgment, or may have been dictated by a view to personal interest; still it is mere advice, and was both given and received as advice.
 

 The. conduct of the parties, then, is full proof of the opinion each entertained of the authority of each; and the first letters written after they had met in
 
 *257
 
 Amsterdam, show that free communications had taken place between them. In a letter of the 19th of June, addressed to Captain .Gantt, the Messrs. Willinks say, “ We have not received yet the promised note of the Russian goods that would be wanted for the Henry Clay.’’ And in the captain’s letter from the Helder, of the 18th of June, he says, “ Herewith, I annex you a copy of the order for Russian produce, which the owners of the Henry Clay wish to constitute her return cargo.”
 

 . These letters strengthen the probability, that in the verbal communications which were made at Amsterdam, the captain had stated his orders relative to the voyage to St. Petersburg; at any rate, they show, that the . note for the cargo, which had not been transmitted to the Messrs. Willinks, bad been entrusted to him. There is an expression in the last letter of the plaintiffs to the defendants, which seems .touhave. some bearing on the question, whether the captain had’communicated to them his letter of instructions. They say, “ You cannot expect, gentlemen, that we shall enter here into all the details of this business, which has been conducted by üs,
 
 bonajide, -whh
 
 a view-to your greatest benefit and advantage, faithfully relying on your promises, and considering the incomplete state of your instructions to us, that your captain was furnished with more particular orders.”
 

 There is a vágüeness in these expressions, arising, probably, from the unskilfulness of the translation, if they were not written in our language, which
 
 *258
 
 leaves it, in some measure, uncertain, whether the plaintiffs meant to assert, that the captain was furnished with more particular orders, or- that they inferred this fact from the incomplete state of the instructions to themselves. If the case depended entirely. on the question, it might,'perhaps, be proper to refer to the original; but wé do not think, tljat the right of the defendants to. the deduction they claim from the demand, depends, entirely on. the fact, that their orders to their captain were shown to the plaintiffs. Their letter to the plaintiffs was at best equivocal; and any evidence showing that the construction which the plaintiffs put on that letter, .coil formed, to the intention of the defendants, will justify the plaintiffs, although that evidence was not in their possession pending the; transaction. ' The defendants cannot bé permitted to say, (< It is true, we. did-not intend to. consign the. Henry Clay to you, farther than ,.was necessary to .your agency in Amsterdam. We did.not intend, to. give. you. any control, over her voyage, to- St. Petersburg. We had committed that whole ,subject to our-captain, and; had given him precise orders, respecting) it. We had even gone: so far as to direct him to disregard your consignment of the vessel, should you endeavour to make one: But -you did not see these orders, and we will, therefore, make you responsible for not having understood our letter to you, as creating a duty which we did not intend it should create.” This, certainly, cannot be permitted. As little can they be permitted' to charge the Messrs. Willinks, in consequence of the
 
 *259
 
 advice they gave, with the profits Vvhich might possibly have- been made on the voyage to St. Peters-burg. Although the orders were broken with their advice, still they were broken by the master, to whom their execution was confided, not by the Messrs. Willinks, to whom their execution had not been confided.
 

 Were it even possible, that the Mesárs. Willinks could . be made responsible in any form of action which could be devised, for the possible loss resulting from the breaking up of the voyage to St. Peters-burg, they cannot, we think, be made responsible in this. Having loaded the Henry Clay at Amsterdam, clearly without authorityj the cargo was shipped at their risk. The defendants might have refused it áltogether.' But they have sold it, and received the money. This creates an assumpsit to pay the money received. This action, then, so far as respects the count for money received by the defendants to the plaintiffs’ usé, is founded on the transactions in Baltimore'; and, were it even possible, which .We are far from admitting, that the defendants could be allowed, to make a deduction of this supposed loss, from the sum to be recovered on the count for money laid out and expended to their úse, provided that count could be supported, yet they cannot be allowed to make that deduction from the sum to be recovered on /the count for money had and received to the use of the plaintiffs, for goods sold as the goods of the plaintiffs.
 

 
 *260
 
 Certificate. This cause came on to be heard on the transcript of the record of the Circuit Court, for the fourth Circuit and District of Maryland, and on the question on which the Judges of said Court were divided, and was argued by counsel. On consideration whereof, this Court is of opinion, that the plaintiffs have a demand in law against the defendants, which can be maintained in the action now depending in the Circuit Court, and that the defendants are not entitled to a deduction from the same for the amount of any loss which may have been sustained by them by reason of the alteration in the destination of the ship Henry Clay to St. Peters-burg, and the loading her at Amsterdam. Which opinion is direc ed to be certified to the Circuit Court.