No. 8.—RICHARD BYRNE, plaintiff in error, *vs.* DOUGHTY & BEALL, defendants in error.

[1.] A charge to the Jury as to the law, not warranted by the evidence, is error, and a charge is warranted by evidence when there is conflict of testimony, the Court leaving the finding of the facts upon which the charge is based to the Jury.

[2.] If a principal recognize or adopt a transaction made by his factor, he assumes all its obligations, both to third persons, and to the factor; and to bind the principal, it is not necessary that he confirm it directly or positively, but the confirmation may arise by implication from the acts or proceedings of the principal, *in pais.*

[3.] If a consignee advance upon cotton consigned to him, to the owner, or a third person on his account, without a special request, and the owner recognize the act by treating the transaction as his own, or by receiving the benefits of it, he is bound to refund the advance to the consignee.

[4.] The acts and conduct of the principal, relative to the transactions of his agent, are construed literally in favor of the agent.

[5.] When a factor had drawn upon his house for the amount of the advance, and the draft was delivered to the drawee: *Held*, that in the eye of the law, that was an advance, and a ratification of the transaction before the money was in fact paid on the draft, would bind the principal to refund.

Assumpsit, in Newton Superior Court. Tried before Judge STARKE. September Term, 1852.

This was an action of assumpsit, brought by Doughty &

Beall against Richard Byrne, for the recovery of eleven hundred and five dollars and forty-six cents, advanced by the plaintiffs for the defendant.

On the trial, much evidence was submitted to the Jury, from which it appears, that in the latter part of the year 1850, Thomas F. Jones sold to Byrne, the defendant, a lot of forty-two bales of cotton, for which Byrne paid him all the purchase money, except $1078.50.

The cotton was forwarded to the plaintiffs, who were commission merchants in the city of Augusta, and who had been, and were at the time, acting as factors for the defendant.

Thomas F. Jones swore that some time in June, 1851, he heard a conversation between Beall and Byrne, in which Byrne stated that witness ought to be paid, but he did not have the money. Beall drew an order on plaintiff's house, in Augusta, for the amount, in favor of witness, for Byrne to sign; which Byrne refused to do; and remarked that Beall could pay witness, and they would have a settlement afterwards.

Beall then said it would make no difference, he would charge the amount in Byrne's account, and accordingly gave witness a draft drawn by himself for the amount, on the house of Doughty & Beall, and witness afterwards got the money.

*J. H. Murrell, sworn.*—Stated that he heard defendant, Byrne, say to Beall, one of the plaintiffs, that if he would pay Jones the balance due him on the cotton, $1078.50, he would settle with him.

*N. Hunter, sworn.*—Was present at the attempted settlement between the plaintiff, Beall, and defendant, Byrne; when Byrne stated that plaintiff might settle with Jones for the cotton, and that he would have nothing to do with it. This was subsequent to the conversation sworn to by Jones and Murrell.

The Court charged the Jury—"That if the amount for which this action is brought, was advanced by the plaintiffs to Jones, at the request of the defendant, then there is an end of the matter, and the recovery must be for the plaintiff.

"And although the defendant may not have requested the

advancement to be made to Jones, still you will find for the plaintiffs, if the defendant has treated the transaction as his own, by recognizing it as his own ; and if he has by his assent, had the benefit of the advance, he is liable for the amount.

"If the advance was not made by defendant's request—if he has not treated the transaction as his own—or if he has not by his assent, had the benefit of the advance, he is not liable."

Counsel for defendant requested the Court to charge the Jury—"That in order to bind the defendant, his recognition of the transaction must have been after the money was advanced."

The Court refused to make the charge.

The Court further instructed the Jury—"That although they might believe from the evidence, that Byrne gave direction and controlled the cotton, yet if they believed from the evidence, that he did not request plaintiffs to advance it for him, but expressed his dissent to the payment of it on his account by the plaintiffs, before they had given Jones a draft for the same, you must find for the defendant."

To which charge and refusal to charge, counsel for defendant excepted. The Jury found a verdict for the plaintiffs.

Whereupon counsel for defendants moved for a new trial, upon the following grounds:

1st. Because the Court erred in charging the Jury that if they believed the defendant had the benefit of the sale of the Jones cotton, whether the plaintiffs advanced the money with or without his request, they ought to find for the plaintiffs.

2d. Because the Jury found without and against evidence.

3d. Because the Jury found contrary to law, and against the charge of the Court.

The Court refused to grant a new trial, and counsel for defendant excepted; and upon these several exceptions assigned error.

W. W. CLARKE, for plaintiff in error.

FLOYD, for defendants in error.

*By the Court.*—NISBET, J. delivering. the opinion.

[1.] The exceptions are to the instructions of the Court to the Jury, and to the refusal of the Court to instruct as requested by the plaintiff in error, who was defendant below. A new trial was also moved, and refused, and exceptions taken. The evidence (a large portion of which is not found in the Reporter's brief, and indeed was not required to be there,) shows that the defendants in error, Messrs. Doughty & Beall, commission merchants in the City of Augusta, during the winter of 1850, and spring of 1851, were the factors of Byrne, the plaintiff in error, who was engaged in the business of buying and selling cotton. Byrne residing in the interior, bought cotton, and con-. signed it to Doughty & Beall, who advanced upon it; sold it for their principal in Augusta, or shipped it on his account, to New York. The transactions during the season, between the parties, amounted to a considerable sum. The relation between them is plainly established to be that of principal and factor; and the questions made in the record, are to be determined by those rules of law which apply to, and govern that relation. This suit was brought by Doughty & Beall, for the sum of $1078.50, with interest, advanced by them to one Jones, upon forty-two bags of cotton, bought by Byrne of him, and consigned to them. The presiding Judge instructed the Jury, that "if the amount for which this action is brought was advanced by the plaintiffs to Jones, at the request of the defendant, then there is an end of the matter, and the recovery must be for the plaintiffs." I did not understand the counsel to deny that this is sound law, although it is excepted to. I know that he would not peril so good a professional reputation as he enjoys by so rash a denial. That a consignor is liable to his factor for an advance made upon a consignment of cotton, at his request, whether made to him or to a third person on his account, is too plain a proposition to require even a reference. But he objected to this charge, because not warranted by the evidence. If that be so, as we have frequently ruled, it is error. Clearly it is not so. What is the evidence? Byrne

bought the cotton from Jones, and paid for it, except $1078.50, and notified Doughty & Beall of the purchase, giving them special instructions about it, when it should be received. Jones, because of the non-payment of this balance, retained the cotton at the depot at Covington, for some time, and finally shipped it to Doughty & Beall, in his own name; determining, as he said, to retain the control over it until he was paid. It was received by Doughty & Beall, and by them and by Byrne, from the beginning, until it was shipped and sold at New York, and an account of the sale rendered to him, recognized and treated as cotton belonging to Byrne. Upon Jones' demand upon Byrne for this balance, he declined paying, saying that he had not the money, and that Doughty & Beall ought to pay it, for they had refused to advance farther funds. In the month of June, 1851, Beall, one of the firm of Doughty & Beall, called upon Byrne for a settlement, and Jones testified to what transpired at the interview. At the time of this interview, Jones had not been paid, and the difficulty in the way of a settlement grew out of that fact. Jones says that Beall proposed to Byrne to pay it by a draft upon Doughty & Beall, and drew a draft for him to sign, which he refused to do, saying, "Beall could pay him (Jones) the money, and they could have their settlement afterwards." The witness proceeds to say that some contention arose, and Beall said, "it would make no difference, he would charge the amount of the draft against Byrne." Thereupon he drew a draft for the amount, on his house in Augusta, which Jones says he took, and got the money. He testifies also, to what occurred at a subsequent interview, and says that Beall demanded the draft of him, witness, and that from his recollection of the facts of that interview, he (the witness,) was to retain the draft and thus get the money.

Another witness, *Murrell,* testifies, that he was present at the interview between Beall and Byrne, when the draft was drawn, and that Byrne told Beall that if he would pay Jones the balance of $1078.50, due on the cotton, he would settle with him. Here then, by two unimpeached witnesses, a request

to advance this money was plainly proven.    Was this evidence enough to warrant the instruction ?    The counsel, however, to sustain his objection to this charge, relies upon the testimony of another witness, *Hunter*.    He testifies that he was present at an interview, about the same time, between Beall and Byrne, when an attempt at a settlement was made ; that the difficulty seemed to grow out of losses on cotton ; that Byrne told Beall that he had no objection to his settling with Jones for his cotton, and that he would have nothing to do with the Jones cotton, and Beall might settle with him for it.    Beall told Byrne that he had paid Jones for his cotton, and Byrne replied that he had no objection to his doing so.    Byrne refused to settle with Beall on account of the Jones cotton.    Upon this evidence the assumption is made, that the charge was not warranted by the evidence.    The fact is, that it is not in the least in conflict with the evidence of Jones and Murrell, which established the request to make the advance, because upon cross-examination, *Hunter* testifies that the interview which he witnessed was *the last interview between the parties*.    At the first interview, Jones and Murrell prove that the request was made, and that in pursuance of that request, Beall did in fact, then and there, draw upon his house for the money, and hand the draft to Jones ; and more, *Hunter* swears, that at the interview that he witnessed, Beall stated that he had paid to Jones the balance on his cotton.    The liability of Byrne was fixed by the request to Beall to advance, and by his promise to settle with him for it.    He could not escape from this liability by a subsequent renunciation of it.    Neither the law—nor the faith of merchants—nor morality, will allow a man to assume an obligation, and escape from it by a subsequent repudiation.    But concede that *Hunter's* evidence is in conflict with that of Jones and Murrell, is the Court forbid to charge upon the law of a case because there is conflict of evidence?    I know of no such rule.    It is his duty to leave the facts to the Jury, as Judge *Starke* did here, instructing them that if there was a request, they should find for the plaintiff.    They did find that

the request was made, for they rendered a verdict for the plaintiffs below.

[2.] The next instruction is as impregnable as the first. It is in the following words: "And although the defendant may not have requested the advancement to be made to Jones, still you will find for the plaintiffs, if the defendant has treated the transaction as his own, by recognizing it as his—if he has by his assent had the benefit of the advance, he is liable for the amount." I understand his honor to say in this charge, that if the principal recognizes an advancement made by his agent, he is bound to refund it, and that treating the transaction as his own is a recognition. And farther, if he receives the benefit of the advance, he is to be considered as assenting to it, and is liable.

[3.] An agent has a right to charge his principal with all advances made by him in the regular course of his employment. The agent has a lien on goods in his hands for advances, and in addition thereto, the principal is personally liable therefor; provided always, that such advances are made in good faith, and without negligence, and are necessary to protect and promote the interest of his principal in the subject-matter of the agency. (See these doctrines discussed in *Brown, Shipley & Co. vs. P. A. Clayton,* in the 12th *Vol. of Geo. Rep. not yet published.*) A request to advance is not always necessary to be proven, nor a promise to refund. A request may be implied from the nature and regular course of the business in which the agent is employed, and in that case the law creates a liability to pay. In this case, the request to advance may be fairly implied from the nature of the business, and from its regular course. But the charge now being considered, does not go upon the ground of a request, express or implied; but upon the ground of recognition. The presiding Judge uses the word recognize. In its connection here, it has no meaning, I apprehend, different from that of ratify. Recognition, confirmation, adoption, and ratification, are used indifferently in the books, as having substantially the same legal import. Now, in relation to this doctrine, I say that to bind the prin-

cipal, there is no necessity for a positive or direct confirmation on his part, of the act of the agent, but it may arise by implication, from the acts or proceedings of the principal *in pais.* 3 *Chitty on Com. and Manuf.* 197, 198. 1 *Livermore on Agency,* 45. *Story on Agency,* §253.

[4.] And for this purpose the acts and conduct of the principal are construed liberally in favor of the agent. Slight circumstances and small matters, will sometimes suffice to raise the presumption of ratification. *Story on Agency,* §253, *notes* 2 *and* 3. Authority to do the act, is presumed from subsequent acts of assent and acquiescence. This is the general proposition, and really covers the charge of the Court. *Paley on Agency, by Dunlap,* 171, *and note* O. *Livermore, Pr. and Ag. vol.* 1, *p.* 44, *et seq. Dunlap's Paley on Ag.* 4, 114. *Story on Agency,* §§253 *to* 260. The effect of such ratification is not only to bind the principal to third persons, but to subject him to the same obligations to the agent as if he had been expressly employed to do the act. *Ibid.* But one act from which acquiescence may be presumed, is that act specified by Judge *Starke,* to wit, treating the transaction as his own. As for example—if a factor purchase goods contrary to orders, and the principal refuses to accept the contract, but having received the goods, afterwards sells them on his own account, that would ratify the purchase. He acts upon the transaction, treats it as his own. *Story on Agency,* §259. *Cornwall vs. Wilson,* 1 *Vesey,* 509. 1 *Livermore, Ag.* 395, 396. 4 *Bing.* 722. *Paley on Agency, by Lloyd,* 28, 29, 31. 6 *Wheat.* 240. 5 *Hill's N. Y. R.* 137. Another act from which ratification may be presumed is that also specified by the Judge, to wit, receiving the benefit of the transaction. *Dunlap's Paley,* 171, *note.* 9 *Cranch,* 153. 4 *Mason,* 296. 1 *Adol. and Ellis,* 526. This charge is made one of the grounds for a new trial, and may be considered as disposed of.

[5.] The Court was requested to instruct the Jury, that in order to bind the defendant below, his recognition of the transaction must have been after the money was advanced; which was declined, and thereupon exception taken. There are sev-

oral reasons why the Court should not have given this instruc-
tion.   In the first place, to bind the defendant, Byrne, it was
not necessary that the recognition should be after the money was
paid.   The very idea of recognition is that it must be after
the transaction which it adopts.   A recognition cannot pre-
cede the fact recognized.   The Court had already charged the
Jury as to what would amount to a recognition of the transac-
tion.   And what was the transaction?   It was the advance
made by Doughty & Beall on the Jones cotton.   In the eye of
the law, that advance was made when they agreed to pay it,
and drew a draft for the amount and delivered it to Jones.   If
that transaction was recognized before the money was in fact
paid, the defendant was bound by it.   Again, an isolated in-
struction in accordance with this request, might have misled
the Jury, by inducing them to believe that the plaintiffs' case
depended upon that alone.   The Court was justified, moreover,
for not giving this instruction, because he had before charged
correctly the law of recognition as applicable to the case.

In the rule, a new trial is asked, upon the ground that the
Jury found contrary to the instructions of the Court, and it
being refused, that ground is assigned for error.   It is not of
course to be understood that the plaintiff in error complains
that the Jury disregarded any instruction other than that
which is in his favor.   He must, therefore, refer to the follow-
ing charge, given on the trial, at his instance: "You are far-
ther instructed, that although you may believe from the evi-
dence, that Byrne gave direction and controlled the cotton,
yet if you believe from the evidence that he did not request the
plaintiff to advance it for him, but expressed his dissent to the
payment of it on his account by the plaintiffs before they had
given Jones a draft for the same, you must find for the defend-
ant."   This charge was decidedly in favor of the plaintiff in
error, and not easily reconciled with instructions previously
given.   If there was error on the trial of this cause, it was in
giving it.   The defendant below, however, had the full bene-
fit of it.   He has no reason to complain that the Jury found
against it, for one all sufficient reason, and that is, that the

facts upon which the law of the instruction rested, were left to be found by the Jury; and rendering a verdict against the defendant, the legal presumption is, that they were unable to regard that law because the testimony was against the defendant.   A new trial is asked also, because the Jury found without, and contrary to evidence.   This ground, I conclude, was inserted *pro forma.*   A Jury who would not find as the Jury did in this case, upon the same evidence, ought to be branded as incurably stupid, or revoltingly corrupt.·

Let the judgment be affirmed.