GORDON et al. v. NEWMAN.

(Circuit Court of Appeals, Fifth Circuit. June 25, 1894.)

No. 243.

RECEIVERS' CERTIFICATES—PRIORITY OF LIENS—RES JUDICATA—INJUNCTION.

A final decree for foreclosure of railroad mortgages directed that the property be sold, subject to any and all liens prior to the lien of the mortgages and which had not been ascertained and adjudicated, and subject to receiver's certificates theretofore authorized, declaring said certificates a first and prior lien on the property as between them and the mortgages. After the sale, a decree was made on an intervening claim of a mechanic's lien on part of the property, presented before the receiver's certificates were authorized, which allowed such lien as a subsisting first lien on the property, and directed payment of the amount by the purchaser, and, on default, a sale of the property; and this decree was affirmed, on appeal, by the supreme court. *Held*, that its enforcement could not be restrained by holders of receiver's certificates claiming priority over such lien, as they were bound by the decree as privies, and because an injunction for such purpose, in effect, stayed execution of the final decree of the supreme court.

This was a suit by Isidore Newman against Gordon, Strobel & Lareau, for an injunction to restrain enforcement of a decree.

On the 9th of January, 1889, the Central Trust Company of New York filed against the Sheffield & Birmingham Coal, Iron & Railway Company, in the circuit court of the United States for the northern district of Alabama, its bill to foreclose two certain mortgages. On the 12th of January a receiver was appointed, and took possession of the mortgaged property. On the 11th of February, Gordon, Strobel & Lareau filed their intervention, claiming a mechanic's lien upon the three furnaces and one acre of land which were also covered by the mortgages sought to be foreclosed in the suit just referred to. Subsequently, a request was filed by the receiver, asking authority to issue receiver's certificates to the amount of $150,000 for the purpose of raising money to pay taxes on a portion of the land, and for other objects stated in the prayer. This petition was granted on the 11th of July, 1889. The issue of receiver's certificates was consented to by the trustee under the mortgage, and the interlocutory order authorizing the certificates stated that they were a first lien on the whole property. On the 3d of December, 1889, a final decree of foreclosure was entered on the bill of the Central Trust Company, the decree, among other things, providing as follows: "And it is further ordered, adjudged, and decreed that said sale shall be made subject to any and all liens covering or embracing said property or premises, or any part thereof, which constitute liens upon said property prior to the lien of the mortgages foreclosed in this suit, and which have not been ascertained and adjudicated by this court, and expressly subject to the receiver's certificates heretofore authorized to be issued by said J. G. Chamberlain, receiver, to an amount

not exceeding one hundred and fifty thousand dollars, said receiver's certificates being a first and prior lien upon the said properties, as between them and the two mortgages aforesaid, or either of them; and the amount of said receiver's certificates issued and constituting such lien as set forth in Schedule B, hereto annexed, and made part of this decree." This decree was subsequently modified in the following particular: "That there be stricken from said decree these words, 'and expressly subject to the receiver's certificates heretofore authorized to be issued by said J. G. Chamberlain, receiver, to an amount not exceeding one hundred and fifty thousand dollars,' and that in the place and stead of said words there be inserted these words, 'and expressly subject to the receiver's certificates heretofore authorized to be issued by said J. G. Chamberlain, receiver, to an amount not exceeding one hundred and twenty-five thousand dollars,' and that the twenty-five thousand dollars of said certificates disposed of by Charles D. Woodson—the same being five certificates of five thousand dollars each, and numbered 8, 9, 10, 11, and 12, dated October 10, 1892, and set forth in the Schedule B of said decree—be not included in said amount of one hundred and twenty-five thousand dollars; but that the purchasers of said property at the sale upon said decree take the same subject to the right to resist the payment of said five certificates as disposed of by said Woodson, and that the validity of said five certificates be adjudicated only in this court, and proper case to be made by the parties in interest." On the 3d day of December, 1889, under the original and modified decree, the property was sold. The sale was duly confirmed, and a deed made to the purchasers. On the 24th day of June, 1890, a decree was entered, on the intervention of Gordon, Strobel & Lareau, as follows: "It is further ordered, adjudged, and decreed that the interveners, Gordon, Strobel & Lareau, do have and recover of the claimant, the Sheffield & Birmingham Coal Iron & Railway Company, as recommended in said master's report, the sum of fifty-seven thousand, eight hundred and eight and twelve one-hundredths dollars ($57,808.12), with interest thereon at six per centum (6%) per annum from the 18th day of December, 1888, until paid, and all costs of this intervention be taxed, and that the mechanic's lien, as given by the laws of the state of Alabama, and claimed as set forth in the intervention on file, be, and the same is hereby, fully recognized and allowed as being a subsisting first lien upon the property specifically described in said intervention and exhibits. And whereas, the said property, which, at the filing of the intervention in this case, was in the possession of the court, has been since sold, conveyed, and delivered under the decree rendered in this cause, but subject to whatever lien or claim which may be allowed in this case, it is further ordered, adjudged, and decreed that the said purchasers of the said property do pay the aforesaid judgment of fifty-seven thousand eight hundred and eight and twelve one-hundredths dollars ($57,808.12), with interest as aforesaid, and all costs as aforesaid, within twenty days after the filing of this decree, and that in default thereof an order for the resale of said property for the satisfaction of the judgment aforesaid may issue." From this decree, an appeal, operating as a supersedeas, was prosecuted to the supreme court of the United States. In the meanwhile the holders of the receiver's certificates enumerated in the modification of the decree of foreclosure filed their petition of intervention in the foreclosure suit to enforce against the purchasers at the sale the said receiver's certificates. The court below having adjudged in their favor, an appeal was prosecuted to this court, and the judgment below was affirmed. Alabama Iron & Ry. Co. v. Anniston Loan & Trust Co., 6 C. C. A. 243, 57 Fed. 25. After the affirmance of this judgment to enforce the payment of the $25,000 of certificates, an order for the sale of the property was entered, and on the 22d day of January the property was sold. Thereafter, the judgment rendered in favor of Gordon, Strobel & Lareau was affirmed by the supreme court of the United States, and upon the filing of the mandate of that court a decree was entered recognizing the claim of Gordon, Strobel & Lareau, as above stated, and directing the sale of the property to enforce their lien. Thereupon, Isidore Newman, Sr., averring himself to be the holder of $110,000 of the receiver's certificates, filed a bill for an injunction, in which he substantially set out (1) that Gordon, Strobel & Lareau had no mechanic's lien upon the property, because their claim for a lien had not been properly re-

corded under the laws of Alabama; (2) that the receiver's certificates held by the complainant ranked the claim of Gordon, Strobel & Lareau, and were therefore entitled to be paid from the proceeds of the property in preference to the lien which had been adjudged in favor of Gordon, Strobel & Lareau; (3) that the whole property, consisting of the furnaces, appurtenances, and seventy thousand acres of coal land, was one concern; that the separate sale of the portion on which lien of Gordon, Strobel & Lareau was asserted would materially injure his (Newman's) rights. An injunction issued, restraining the enforcement of the decree in favor of Gordon, Strobel & Lareau, and from the order so issuing the injunction an appeal was prosecuted to this court.

W. A. Gunter, for appellants.

J. D. Rouse and Wm. Grant, for appellee.

Before WHITE, Circuit Justice, and LOCKE and PARLANGE, District Judges.

WHITE, Circuit Justice, after stating the case, delivered the opinion of the court.

The claim of Gordon, Strobel & Lareau had been presented by way of intervention at the time the receiver's certificates were ordered to be issued. Their lien was recognized by the final decree in the suit, and was affirmed by the supreme court of the United States. To these decrees the holders of the receiver's certificates were necessarily privies. They took the certificates subject to the lis pendens, and were therefore bound by the final decree. The attack, therefore, on the lien is without merit, as the complainant in injunction is estopped, by the force of the thing adjudged, from assailing the lien. Like reasoning controls the contention that the receiver's certificates are prior in rank to the mechanic's lien. The final decree for the foreclosure of the mortgage directed that the property be sold "subject to any and all liens covering and embracing the property or premises, or any part thereof, which constituted liens upon the said property prior to the lien of the mortgages foreclosed in this suit, and which have not been ascertained and adjudicated by this court." This language, in unambiguous terms, recognizes the paramount nature of the mechanic's lien. After doing so, the decree adds, "and expressly subject to the receiver's certificates heretofore authorized to be issued; * * * said certificates being a first and prior lien upon the said properties, as between them and the two mortgages aforesaid, or either of them." The words, "as between them and the mortgages," are clearly words of limitation, restricting the priority of the receiver's certificates to rank over the mortgages, and not to rank over the mechanic's lien which had been just previously recognized as being unqualifiedly first in rank. Any other construction would render the words, "as between them and the mortgages," entirely useless and nugatory. This construction of the final decree in the foreclosure suit was adopted in the judgment which disposed of the intervention of Gordon, Strobel & Lareau. That judgment directed that "they be paid the sum of fifty-seven thousand, eight hundred and eight and twelve one-hundredths dollars ($57,808.12), with interest, and that the mechanic's lien, as given by the laws of the state of Alabama, * * * be, and the

same is hereby, fully recognized and allowed as being a subsisting first lien upon the property." The remedy provided in the decree for the enforcement of the claim emphasizes the priority accorded to the amount secured by the mechanic's lien, since it directs that the sum be paid by the purchaser, and that in default of such payment within 20 days the property be sold. That the holders of receiver's certificates depend for their ultimate rank upon the final decree in the cause where the certificates are issued is beyond question. A text-book thus states the rule:

"The holders of these securities must see to it that in the order distributing the purchase money the proper provision is incorporated for their redemption, because, if once the property is sold, and the court makes a final decree without providing for the payment of the certificates, there is an end of the matter. * * *" Beach, Rec. par. 401, p. 332.

The matter was well considered in Mercantile Trust Co. v. Kanawha & Ohio Ry. Co., 7 C. C. A. 3, 58 Fed. 11. In that case, Circuit Judge Taft, in expressing his own and the opinion of Jackson, Circuit Judge, and Barr, District Judge, said:

"Does the Adams Express Company, as a holder of receiver's certificates, stand in any better position than if it had been present by counsel in court when the final decrees of confirmation, release, and distribution were entered, objecting to the same? It is very clear that it does not. When the Adams Express Company received from Sharp the evidences of indebtedness on which it now relies for its lien, it was informed by what was written thereon that Sharp was a receiver acting under order of the district court of West Virginia, and having custody for the court of the Ohio Central Railroad, of which the court had taken possession in a case then pending before it, and that the lien assured to the express company on the face of the certificates was dependent on an order and adjudication of that court. The doctrine of lis pendens would charge any one who purchased this railroad, or acquired an interest in it, pending the litigation, with notice of the litigation, and would subject the property in his hands to the final action of the court, without his being brought into court as a party. If this be true of one acquiring an interest by deed, conveyance, or mortgage, a fortiori must it be true of one whose interest is acquired, and has its existence, only by virtue of the litigation. The express company was put upon inquiry, then, as to all that had been done in that litigation, and was charged with notice of all the subsequent proceedings therein, as much as if it had been a party to the record. * * * In Union Trust Co. v. Illinois M. Ry. Co., 117 U. S. 434-456, 6 Sup. Ct. 809, the court said: 'The receiver, and those lending money to him on certificates issued on orders made without prior notice to parties interested, take the risk of the final action of the court in regard to the loans. The court always retains control of the matter, its records are accessible to lenders and subsequent holders, and the certificates are not negotiable instruments.'"

Under these principles the holders of the receiver's certificates depended, necessarily, for their ultimate payment, upon the rank given them in the final decree of foreclosure, to which decree they were necessarily privies. By the terms of that final decree the priority of the mechanic's lien was recognized. The claim, therefore, now asserted, is an attempt to take the benefits of the final decree of foreclosure, in so far as it provides for the payment of the certificates, by stipulating that they should be assumed by the purchaser, and yet, at the same time, repudiate that decree in so far as it provides for priority of rank in favor of the holder of the mechanic's lien. The contention, however, goes much fur-

ther than this. The injunction practically amounts to a stay of execution on the final decree of the supreme court of the United States, which not only recognized the sum secured by the lien as first in rank, but also directed that in default of its payment the property should be sold to enforce it within 20 days. To this decree the holders of the certificates were privies, since it was a decree made on an intervention in the record wherein the receiver's certificates were ordered to be issued. It follows, therefore, that as the injunction restrained the enforcement of the decree of the supreme court of the United States, and had the effect of setting at naught its mandate, it was improvidently granted, and should be dissolved. The injunction is therefore dissolved, and the case remanded to the court below for further proceedings in conformity with this opinion.