DENISON & NORTHERN RAILWAY COMPANY vs RANEY–
ALTON MERCANTILE CO.

Opinion delivered October 26, 1899.

*1. Railroads—Lien for Supplies—Judgment—Final or Interlocutory.*

In an action to establish and enforce a lien against the property
of a railway company for supplies furnished a construction
company in building the railroad, a judgment which ascertain-
ed and stated the amount of the indebtedness of the construc-
tion company, adjudged a lien in favor of those furnishing
supplies to the extent of the cash value of the improvements
and, in order to fix the exact amount of the lien, appointed
appraisers to ascertain the value of the improvements and re-
port same to the court and ordering that when so reported and
confirmed, the liens already adjudged should be declared and
fixed on the property of the railway company to the extent of
the value of the improvements, is not a final judgment from
which an appeal will lie, but an interlocutory one so far as it
affected the rights of the railway company; for further pro-
ceedings of a judicial nature were necessary to give the judg-
ment judicial effect.

*2. Railroads—Lien for Supplies—Receiver's Certificates.*

A petition was sufficient to show a cause of action against the
railway company and constitute a lien on its property, which
alleges, as a basis of recovery, the institution of a suit wherein
the railway company was a party, in which a Receiver was ap-
pointed and authorized, on a petition in which the officers of
the railway company joined, to contract with a construction
company for the building of its road and to issue receiver's
certificates, which were to be a lien on the railway company's
property, in payment for such construction work; and which
alleged that such contract was entered into, certificates issued,
and the sale of supplies to the construction company on the
strength of such order of court and acts of the Receiver,
although the petition did not specifically allege that complain-
ant was the holder of any of the Receiver's certificates.

*3.* *Railroads—Lien for Supplies—Estoppel.*

Complainant averred in its petition, in a suit to enforce a lien for supplies furnished a construction company in the building of a railroad, that a Receiver had been appointed in an action to which the railway company was a party, and said Receiver had been authorized to contract for the construction of the railroad and issue receiver's certificates therefor, which should be a lien on the property of the railway company, and that this order had been made upon the application of the railway company; that the railway company agreed that a lien be created in favor of those furnishing supplies for the construction of the railroad; and that complainant had furnished supplies to the construction company relying upon such orders of the court. *Held*, the complaint was sufficient on demurrer, the railway company being estopped from denying liability for the benefits thus received upon the strength of such orders although it afterward appeared that the court was without jurisdiction in making same, and had set aside all such orders, and discharged the Receiver because of its lack of jurisdiction in the former action.

*4.* *Railroads—Lien for Supplies—Judgment of Court in Former Action Lacking Jurisdiction, No Bar.*

In an action to enforce a lien against property of a railway company for supplies furnished a construction company, relying upon the security of an agreement of the railway company that those furnishing such supplies should have liens, and the further security of orders of court, in a former action wherein contract for building the road with a construction company was authorized and receiver empowered to issue certificates for such work and supplies which were to be liens on the property of the railway company; and wherein the complaint alleges that the defendant railway company itself procured the said orders of court and knew the material was being furnished by plaintiff; it was untenable for defendant company to contend, as a defense, that because of the dismissal of the former action and discharge of receiver and vacation of all orders, because the court was found to have been acting without jurisdiction, the plaintiff's rights were adjudicated by such dismissal, and that by failing to present its claim before such adjudication and dismissal it could not afterward prosecute same; because

the plaintiff was not relying upon the validity of such orders but upon the conduct of defendant in such suit, which was such as to render it liable for the benefits it secured from plaintiff.

5. *Railroads—Lien for Supplies—No Express Contract with Complain-ant Necessary.*

Where a lien is claimed against the property of a railway company because of supplies furnished to a construction company operating under contract with a Receiver of the railway company, and orders from court obtained on application of the railway company in which application the railway company agreed that all who furnished supplies to the construction company should have a lien on the property of the railway company it is immaterial to the enforcement of the lien that the complainant had no direct express contract with the railway company that its property should be security for the indebtedness thus accrued. And in such an action it is no defense on the part of the railway company to claim that a lien could not be created by verbal promises without any attempt to fix a lien under Mansf. Dig. Chapter 96; for the admission of the railway company in its application for such orders to the Receiver is conclusive for all purposes of the cause, being embodied in the pleadings in open court.

6. *Railroads—Receivership—Ratification of Acts of Officers.*

Where, in a receivership proceeding, certain orders of the court are made upon application joined in by the President and attorney of the railway company, and the company is cognizant of the acts of such officers and received the benefits resulting from such acts, and thereafter the company was sued to enforce a lien for supplies furnished pursuant to the orders of court and such acts of its officers; the railway company could not then deny liability on contracts entered into by its officers or at their instance; for if such acts were unauthorized they were, impliedly, at least, ratified by the company.

7. *.Railroads—Equitable Lien—Extent of Betterments.*

In a receivership proceeding, on the application of the railway company's officers  orders were made by the court authorizing a contract with a construction company for the building of the

railroad, the issuance of receiver's certificates in payment therefor, and for supplies furnished in the building of such road and on an agreement by the railway company that those furnishing such supplies should have a lien on the railway company's property. Complainant relying upon this. furnished supplies to the construction company which were converted into improvements and betterments of the road. *Held,* that the complainant was entitled to an equitable lien upon the property of the railway company to the extent which such supplies bettered the property of the company.

8. *Terms of Court—Regular—Special.*

The action of the court in passing upon and rendering final judgment in this action at a time other than during one of the two regular terms of court usually held in the District, was not an act in vacation but during term time; for the Act of Cong. March 1, 1889 (25 Stat. 784, Sec. 7 and Act of Cong. May 2, 1890 (26 Stat. 94, Sec. 30) require the holding of at least two regular terms of court in each District, and authorize the holding of as many special sessions, in addition, as may be necessary for the dispatch of business, at such times as the judge shall deem expedient.

9. *Masters Report—Exceptions—Not Accompanied by Evidence.*

Defendant railway company was notified, but declined to appear at the taking of testimony before the master; and failing to appear and demand that the testimony should be taken down it was too late for it to present exceptions to the master's port because unaccompanied by the evidence upon which he based his conclusions.

10. *Railroads—Lien for Supplies—Betterments—Appraisers—Jury.*

In an action to enforce a lien for supplies against the property of a railway company, appraisers were appointed to ascertain and state the value of the improvements or betterments made upon the property of the company by the lien claimants. The company made no objection, at the time of their appointment, but rather acquiesced therein. By its failure to demand the ascertainment of this question of fact by a jury, and as it appears that the company has not been prejudiced by the appointment and action of the appraisers, no error can be assigned upon the ground of the action of the court in this respect.

*11. Costs—Allowance—Discretionary.*

No error can be predicated on the allowance of costs, unless it appears that the discretion of the court has been abused; for the allowance of same is a matter of discretion with the court.

*12. Railroads—Lien for Supplies—Franchises—Corporate Rights.*

A railway company, being a party to proceedings whereby a receiver was appointed, receiver's certificates issued, and contracts made for furnishing supplies and building railroad, under an agreement that those furnishing such supplies should have, as security, a lien on the property of the railway company, including its "rights, franchises, equipments and appurtenances of any and every kind and character," cannot, in a proceeding to enforce such a lien for supplies furnished, complain that the lien should not be enforced to the extent of the franchises and corporate rights of the company.

Appeal from the United States Court for the Southern District.

HOSEA TOWNSEND, Judge.

Action by the Ranney-Alton Mercantile Company against the Denison & Northern Railway Company and another to establish and foreclose a lien for supplies furnished in the construction of the first-named defendant's road. Judgment for plaintiff. Defendant, railway company, appeals. Affirmed.

On March 14, 1898, the appellee, Ranney-Alton Mercantile Company, hereinafter called "plaintiff," filed in the United States Court in the Indian Territory, Southern District, at Ardmore, its original complaint in equity against the Mineral Belt Construction Company and appellant, the Denison & Northern Railway Company, hereinafter called "defendant." Plaintiff executed bond, and sued out a specific order of attachment against defendant railway com-

pany's property, which attachment was, on March 21, 1898, executed by the marshal of the court levying upon "all the right, title, claim and interest of the Denison & Northern Railway Co. in and to the franchise and right to build and equip said railroad," including all bridge timber, and tools, ties, telegraph poles, etc. On May 4, 1898, plaintiff filed in said court its amended complaint, and, in substance, alleged that plaintiff is a private corporation existing under the laws of the state of Kansas, with its principal place of business at Topeka, in said state; and at all the dates mentioned in said complaint was engaged in the wholesale grocery business; that the defendant Mineral Belt Construction Company is a co-partnership composed of A. A. Chapman, George Clinton, O. H. Brown, C. B. Kendrick, J. H. Ralston and R. V. Le Grand; that the defendant Denison & Northern Railway Company is a corporation created and existing under the laws of the state of Texas; that theretofore the plaintiff had sold to the defendant the Mineral Belt Construction Company goods, wares and merchandise aggregating the sum of $16,500, and that said construction company is indebted to plaintiff for the purchase price of said merchandise, and interest thereon, in the sum of $17,500; that said debt was long since due, and wholly unpaid, and, alleging the circumstances under which said indebtedness was contracted, that plaintiff has a lien against the property of the Denison & Northern Railway Company to secure the payment of said indebtedness; and in its original complaint alleging in effect that such lien was acquired in the following manner: That the United States Court at Ardmore, in the case of W. L. Crockett et al. against the Denison & Northern Railway Company et al. (No. 2,671), had appointed a receiver over the property of said railway company, who took charge thereof, and was, under an order of said court, authorized to contract with the defendant Mineral Belt Construction Company for the construction of 104 miles of the company's.

railroad in consideration of receiver's certificates, at the rate of $11,000 per mile for each mile constructed; that the said construction company applied to plaintiff for a line of credit, and agreed to pledge to it as security receiver's certificates, and represented that such certificates were a first and valid lien against the property of the defendant railway company; that plaintiff relied upon the orders of the court in the Crockett case and the representation so made by the construction company, and sold and delivered the merchandise sued for to the Mineral Belt Construction Company. To the complaint in the case at bar the railway company, April 12, 1898, filed its demurrer, whereupon, on the 4th day of May, 1898, plaintiff filed its amended complaint with substantially the same allegation as above set forth, with the additional allegation that the defendant railway company understood and agreed that the receiver's certificates were to be used by the Mineral Belt Construction Company to obtain supplies for the construction of said railroad. To this complaint defendant interposed the demurrer originally filed as aforesaid, which was by the court overruled. April 12, 1898, defendant filed affidavit controverting the grounds of attachment, and motion to discharge attachment, which were, on the 2d day of June, 1898, by the court sustained, and the attachment discharged. May 14, 1898, defendant filed answer to plaintiff's amended complaint, and the Mineral Belt Construction Company entered its appearance in said cause, and agreed that the court had full and complete jurisdiction over it, and filed no answer in said cause. May 28, 1898, defendant filed its plea in bar of plaintiff's action. June 2, 1898, said cause came on for hearing, and the court, after hearing evidence then submitted, entered up a decree which was not final as to the amount or value of the lien attempted to be fixed against defendants property, to which decree defendant duly excepted. In accordance with said decree, on July 9, 1898, the court appointed J. B. Ormond, W. E. Johnson and

H. A. Woods appraisers to value the property of defendant. October 24, 1898, said appraisers filed their report, to which report defendant excepted, which the court overruled, to which ruling defendant excepted.   October 29, 1898, defendant filed a plea to the jurisdiction, which was on the same day overruled.   On October 29, 1898, W. F. Bowman, special master appointed under terms of the foregoing judgment, filed his report of the claims presented against the Mineral Belt Construction Company, to which report defendant duly filed exceptions, which the court overruled; and on the same day the court rendered final judgment in said cause, to which judgment defendant excepted, and on the same day filed its motion for a new trial, which motion was on the same day overruled by the court, and defendant was allowed 60 days to file its bill of exceptions, and was allowed an appeal to this court.

*Furman & Herbert, Stuart, Lewis & Gordon,* and *Squire, Sanders & Dempsey* (*Wm. J. Scott, general counsel*), for appellant.

*W. A. Ledbetter* and *S. T. Bledsoe,* for appellee.

SPRINGER, C. J.   The above statement of facts in this case is taken substantially from the appellant's brief.   The attorneys for appellee in their brief contend that the statement prepared by appellant is incomplete and unsatisfactory, and then proceed to make what appellee contends is a full and complete statement of what has been done.   The additional facts to which counsel for appellee insist upon as essential to a complete understanding of the case are substantially as follows:

The Denison & Northern Railway Company was organized in 1892 by Newton B. Childs and his associates.   Childs transferred to one O. H. Brown $1,000 worth of stock, in order to make him eligible as president, and on December 31,

1894, Brown was elected president, and continued in that office until January 15, 1897. Between those times Brown performed all the duties incumbent upon the president; attended stockholders' and directors' meetings. The minutes of the stockholders' and directors' meetings, which are set forth in the record, show that he was engaged in the service of the company, and his authority as president recognized in every way. On April 26, 1895, in recognition of his services as president, his salary was fixed at $5,000 per annum. While Mr. Brown was president, the United States Court for the Southern District of the Indian Territory, sitting at Ardmore, in the case of Crockett et al. against the Denison & Northern Railway Company et al., on the 6th day of November, 1895, appointed Moran Scott receiver of the assets of the Denison & Northern Railway Company. At that time it had no assets except a right or franchise to construct a railroad in the Indian Territory. Under the receivership about $85,000 were expended in constructing about 28 miles of roadbed from Dougherty in the direction of Coalgate, in the Indian Territory. The Denison & Northern Railway Company did not contribute anything towards the construction of the roadbed, nor did any of its stockholders or officers. The money expended was furnished by the Mineral Belt Construction Company and by the appellee in the case at bar. It was expended under the orders of the United States Court in the Crockett case, to which the Denison & Northern Railway Company was a party, and in the orders made therein providing for the construction of the road and the creation of a lien, which it is the purpose of the case at bar to foreclose, the company participated by its president, O. H. Brown. The construction company failed to raise the necessary money to carry out its project under its contract with the receiver, and its effort to build the road failed. There was a complete collapse of the enterprise about August, 1896. After these things had occurred, Brown proved unequal to the emergen-

cies which confronted the president of this company, and thereupon William J. Scott was elected president of the company.    The $1,000 worth of stock which had been used to make Brown eligible as president was returned to Childs, and by him transferred to Scott, to render him eligible. Soon after the election of Mr. Scott as president there was filed in the United States Court by Mr. Scott, on September 4, 1896, a motion in behalf of the Denison & Northern Railway Company, in which motion it is stated that the Denison & Northern Railway Company appeared only for the purpose of submitting a plea to the jurisdiction of the court in the case numbered 2,761, entitled "W. S. Crockett et al. vs The Denison & Northern Railway Company." The grounds upon which that plea is based are set forth therein on pages 352 to 355 of the printed record. The first is that the court was wholly without jurisdiction of the person or estate of the Denison & Northern Railway Company; and, second, that the complaint filed in that case did not state facts sufficient to warrant the exercise of equitable jurisdiction of the court in behalf of complainents in said case. This plea was not finally disposed of until the 14th day of March, 1898, when it was sustained by the court, Hon. Hosea Townsend, judge presiding. It appearing to the court that the complaint did not state facts sufficient to constitute a cause of action in equity, and entitle plaintiffs to the relief therein prayed for, and for the reason that the court had no jurisdiction of the subject-matter thereof, aporders and decrees theretofore made were set aside, canceled and held for naught, and the receiver therefore appointed was discharged. Attention is called to the fact that the Crockett suit, which was instituted the 7th day of September, 1895, was not finally disposed of until the 14th day of March, 1898,—about two years and a half,—and that during this time and up to the 15th of January, 1897, O. H. Brown was the president of the Denison & Northern Railway

(9)

Company.   On the 15th of January, 1897, the stockholders
of the company held a meeting at Denison, Tex, at which a
resolution introduced by Mr. Scott was passed., declaring
"that O. H. Brown is not now, nor has not for the past two
years been, president or director of the company, and is in
no manner interested in or connected with the company; and
his assumption of office, and submitting to service, or at-
tempting to enter the appearance of this company in any
suit or controversy was entered without authority, and is
hereby disclaimed by this company." This was the first act
on the part of the railway company to repudiate
the presidency of Brown. The plaintiff in the case at
bar contends that the Denison & Northern Railway Com-
pany had never expended a cent in the construction of the
roadbed that was constructed under the receivership, and
that the effort of the company to repudiate Brown and dis-
charge the receivership was not accompanied with any offer
to pay anybody anything for the labor and capital expended
on their road.   The plaintiff and interveners claim that
they have a claim upon the assets of the Denison & Northern
Railway Company to secure the payment of advances made
and labor performed by them on the roadbed, and that this
suit has been brought to enforce their lien.   The Mineral
Belt Construction Company interpose no defense, but the
Denison & Northern Railway Company, in its answer,
denies substantially all the allegations in the complaint.

The case came on for trial on its merits on the 2d
day of June, 1898, at which time a judgment was entered
by the court.   Counsel for appellee insist that the judgment
entered at this time was a final judgment, and that, as
no appeal was perfected by the appellant from that
judgment, it is now too late for the errors, if any
were committed, to be reviewed.   The principal conten-
tion of the counsel for appellee is that the judgment en-
tered of that date was a final judgment.   In order that this

contention may be intelligently presented, we will quote here the substantial portions of that judgment. It will be found in the record, pages 35 to 42. The first question passed upon by the court was the pending demurrer to the complaint. The demurrer was upon the ground that the complaint did not state a cause of action. It was overruled by the court. The record of the judgment then proceeds as follows: "Thereupon this cause, and the other causes consolidated herewith, numbers 3,452, 3,453, 3,454, and 3,458, came on for trial upon the merits, and the court, after hearing the evidence and argument of counsel, is of the opinion that the law is with the plaintiffs in each and all of said causes. Wherefore it is adjudged and decreed by the court that the plaintiffs, the Ranney-Alton Mercantile Company, a corporation, do have and recover of and from the Mineral Belt Construction Company, a co-partnership composed of A. A. Chapman, Geo. Clinton, O. H. Brown, C. B. Kendrick, J. H. Ralston, and R. V. Le Grand, the full sum of $17,500 with interest thereon from the date hereof at the rate of six per cent. per annum until paid, for which let execution issue." The judgment then recites the other claimants, and enters judgment for them against the Mineral Belt Construction Company for the amounts found to be due them, and then proceeds further as follows: "(3) That to the extent that improvements have been made upon the line of the Denison & Northern Railroad, it is the opinion of the court that those who did work upon and furnished material and supplies which went into the construction of such improvements should have a lien against the property of said railway company to the extent of the present net cash value of the improvements so constructed or erected upon the located line of said railroad to said railroad company for railroad purposes. (4) That the present cash value of the improvements upon the located line of said railroad should be estimated and appraised by three competent, disinter-

ested persons, to be appointed by the court; and, when the cash value of such improvements shall be so determined and fixed by said persons, a lien shall be declared and fixed upon the property of the Denison & Northern Railway Company to the extent of the cash value of such improvements as so ascertained and fixed. (5) That an account should be stated of those who first made the survey and located the line of railroad under what is known to be the contract of Bracy Lampson & Chapman with the Denison & Northern Railway Company. (6) That an account should be stated of all those who furnished supplies and material under what is known as the contract of the Mineral Belt Construction Company with the receiver of the Denison & Northern Railway Company, said receiver having been appointed by this court in in the cause entitled and styled 'W. S. Crockett et al. vs The Denison & Northern Railway Company et al.,' heretofore pending on the docket of this court; and the claims of such persons last named, other than parties plaintiff herein, shall be established. (7) That this cause, as consolidated, should be referred to W. F. Bowman, Esq., a special master in chancery of this court, with directions to allow all persons not now parties plaintiff herein, and who hold claims against Bracy, Lampson & Chapman or the Mineral Belt Construction Company, to intervene within 60 days from this date, and present, prove, and establish their respective claims against said Bracy, Lampson & Chapman and said Mineral Belt Construction Company, as hereinafter stated, provided such interveners shall pay or secure the payment of their pro rata of the costs of this litigation, including reasonable attorney's fees. (8) That the three persons to be appointed by the court as appraisers, as aforesaid, shall estimate and appraise, first, the present cash value of the improvements constructed and erected upon the line of said railroad, on the located line thereof, on the entire line of railroad as graded, and then for the first six miles from

Dougherty separately from the appraisement of the balance of the improvements constructed and erected by the Mineral Belt Construction Company on a line that deviates from the established and located line of said railroad beyond said point; said appraisement to include all cross-ties, pile drivers, and tools. (9) That all the attachments heretofore issued and levied in this cause and causes Nos. 3,452, 3,453, 3,454, and 3,458 be dissolved, because there is no evidence to sustain the same, as per agreement of plaintiff's counsel in open court made. (10) That after the value of said improvements for the first six miles from Dougherty, as aforesaid, shall be ascertained and established, as aforesaid, and shall be confirmed by this court, the same shall be, and is declared to be, a lien on all the property of the Denison & Northern Railway Company to the extent of the value of said improvements so established, in favor of the plaintiffs herein and other persons who may establish their claims as herein provided. (11) It is therefore considered, adjudged and decreed by the court that causes numbered 3,452, 3,453, 3,454, and 3,458 entitled and styled as aforesaid, pending on the equity docket of this court, by agreement of all parties herein be, and the same are hereby consolidated and shall hereafter be prosecuted as one case, and as cause No. 3,451, pending on the equity docket of this court, entitled and styled 'The Ranney-Alton Mercantile Company vs The Mineral Belt Construction Company et al.'; that the orders of attachment heretofore issued and levied in this cause and in the causes numbered 3,452, 3,453, and 3,458, be, and the same are hereby, dissolved, and held for naught, and that plaintiffs in said causes pay all costs expended and incurred in prosecuting said attachments, for which execution may issue; that the plaintiffs in this cause, and all others who did work upon or furnished material and supplies for the construction of, the improvements upon the located line of railroad for the first six miles from Dougherty, and the said

plaintiffs and all others who furnished supplies for the construction of improvements upon the line of railroad beyond said six miles from Dougherty, are hereby decreed to have a lien against all the property of the Denison & Northern Railway Company to the amount or extent of the present cash value of improvements constructed and erected upon the located line of said railroad for the first six miles from Dougherty, and shall have, and are hereby decreed to have, a lien upon the improvements constructed and erected by the Mineral Belt Construction Company on the line beyond the said six miles from Dougherty, as aforesaid, for the amount and to the extent of the present cash value of said last-named improvements; that the present cash value of the improvements upon the said six miles from Dougherty and the present cash value of the improvements upon the line located beyond the first six miles from Dougherty shall be separately estimated, valued, and fixed by three disinterested persons to wit, one civil engineer, one railroad contracter or builder, and one other practical business man, to be hereafter named and designated by the court, who, as soon after the appointment and qualification as is practicable, shall estimate and value said improvements separately, and report the same to this court; and when so estimated and valued, and the report of said appraisers shall be reported to and confirmed by this court, the defendant, the Denison & Northern Railway Company, within ninety days thereafter may pay or deposit in this court in money the amount or value of the improvements on the first six miles of located line of said railroad from Dougherty, as so estimated, reported to, and confirmed by this court, and when said sum of money is deposited in this court the lien against the property of said defendant, the Denison & Northern Railway Company, as herein provided for, be, and the same is hereby, canceled, and held for naught. And it is further adjudged and decreed by the court: That said defendant, the Denison & Northern Railway

Company, by depositing in this court in money the estimated value of the improvements upon the line commencing six miles beyond Dougherty, as the same may be estimated and valued by the appraisers and confirmed by the court, the said railway company, if it so desires, may take exclusive possession of said last-named improvements, and appropriate the same, free of any and all claims of the plaintiff and all other persons. That this cause, as consolidated, be, and the same is hereby, referred to W. F. Bowman, Esq., as special master in chancery of this court, with direction to hear evidence of all persons who may intervene herein and present claims for work done in the way of surveying and locating the line of railroad under the contract of Bracy, Lampson & Chapman with the Denison & Northern Railway Company, and report to this court his conclusions as to the merits or validity of such claims, which said claims he shall designate as 'Class A'; and to hear evidence of the plaintiffs herein, and all other persons who furnished supplies and did work in the way of improving the located line of the said railroad for six miles from Dougherty, and for improving the line beyond said point, under the contract of the Mineral Belt Construction Company, with the said receiver, as aforesaid, and report to this court his conclusions as to the merit and validity of such last-named claims, which he shall designate as 'Class B'; and that after said appraisements of said improvements is made, as hereinbefore provided, and is reported to and confirmed by this court, if the said railway company shall deposit in this court the appraised value of the improvements upon said first six miles of located railroad from Dougherty, as aforesaid, or the appraised value of said improvements beyond said point, the master in chancery aforesaid shall investigate, pass upon, and report to this court the amount of claims in classes A and B, and, when said report is by this court confirmed, the court will then determine the priority, if any exists, of said claims. And after

said improvements shall be appraised, as aforesaid, if the defendant railway company, within ninety days from the date of the approval of such appraisement by this court, shall fail to deposit in this court in money the value or amount of such improvements for the first six miles from Dougherty, as aforesaid, as hereinbefore provided for, and shall fail to appeal from and file bond as hereinafter provided, then, and in that event, it is considered, adjudged, and decreed by this court that W. F Bowman, as master commissioner, be, and he is hereby, appointed to sell all of the property of said railway company, described as follows, to wit: All the right, title, claim, and interest of the Denison & Northern Railway Company in and to the franchises and the right to build and equip a railroad from Dougherty, Indian Territory, to a certain point on the Missouri, Kansas & Texas Railroad, near Lehigh, in the Indian Territory, and south from a point near Lehigh to Red River, and the roadbed of the Denison & Northern Railway Company heretofore constructed from Dougherty, I. T., to a distance east of about thirty miles, together with all timber, houses, equipments, supplies, bridges, bridge timber, tools, and everything owned by the Denison & Northern Railway Company in the Indian Territory in any way connected with the railroad heretofore attempted to be built from Dougherty in the direction of the Missouri, Kansas & Texas Railroad, together with all right of way, title, deeds, papers, books, documents, maps, etc.; said sale to be made at such time and upon such terms as the court may hereafter direct. It is further considered, adjudged, and decreed by the court that the cost of making said appraisement shall be paid by the Denison & Northern Railway Company, and the amount of the same be credited upon the amount of the appraisement to be by them paid; that, in the event the said Denison & Northern Railway Company shall not advance the amount necessary to pay for the said appraisement within twenty days after such

appraisers are appointed, said sum to be hereafter designated by the court, then the creditors whose claims are hereby decreed to be liens against the Denison & Northern Railway Company, and those whose claims may hereafter be adjudged to be claims against the assets of the Denison & Northern Railway Company, may pay the same in proportion to the amount of their respective claims or demands, and in that event the cost of the appraisement shall be added to the amount of the appraisement to be paid by the Denison & Northern Railway Company. It is further ordered, adjudged, and decreed that all parties to this suit, both plaintiffs and defendants, their agents or attorneys, be restrained from interfering in any manner with any and all of the assets of the Denison & Northern Railway Company, on which a lien is declared to exist, as hereinbefore stated, until the terms of this order have been complied with. But if said railway company shall appeal from this judgment, and shall execute and file a good and solvent bond herein in the amount of the appraised value of said improvements, then, and in that event, this judgment shall be superseded, and all of the property appraised, as aforesaid, shall be delivered into the possession of the defendant, the Denison & Northern Railway Company. To which judgment of the court the said defendant, the Denison & Northern Railway Company, at the time of the rendition thereof, in open court excepted, and still excepts."

A motion for a new trial was filed on the next day, June 3, 1898, and on the next day—June 4th—the court overruled the motion; to which judgment of the court the Denison & Northern Railway Company at the time duly excepted, and on the same day the following order was entered: "On this, the 4th day of June, 1898, on motion of defendant, the Denison & Northern Railway Company, in open court made, the said defendant, the Denison & Northern Railway Company, is allowed and granted an appeal from the judg-

ment rendered and entered herein at the present term of this court to the United States court of appeals for the Indian Territory.'' This appeal was never perfected. On the 9th day of July, 1898, the court appointed three persons as appraisers to appraise the property in accordance with the judgment above set forth. In this order is the following recital: ''And counsel both for plaintiffs and defendants having in open court agreed to the appointment of such persons.'' No exception was noted to the making of this order. On the 28th day of September, 1898, attorneys for the plaintiffs and interveners filed a motion to order the property sold, and on the same day the court ordered that W. F. Bowman, special master commissioner, do proceed to sell all the assets of the Denison & Northern Railway Company, described as follows, to wit: ''All the right, title, claim, and interest of the Denison & Northern Railway Company in and to the franchises and the right to build and equip a railroad from Dougherty, Indian Territory, to a certain point on the Missouri, Kansas & Texas Railroad, near Lehigh, in the Indian Territory,'' etc.; ''together with all the timber, houses, equipments, supplies, bridges, bridge timber, and tools, and everything owned by the Denison & Northern Railway Company in the Indian Territory in any way connected with the railroad heretofore attempted to be built, together with all right of way, title, deeds, books, maps,'' etc. It was further ordered by the court that, as soon as the appraisers filed their report fixing the value of the betterments and improvements, and said report shall be confirmed by the court, the said master commissioner shall proceed to sell all the assets of said railway company, fixing the terms of the sale; and the court further ordered that the cause be continued until the 15th day of October, 1898, in order that the appraisement of said assets should be made, and the report thereof confirmed; to which judgment the Denison & Northern Railway Company excepted. The report of the

appraisers was filed October 24, 1898, and the report of the master was filed October 29, 1898. On the same day the attorneys for the Denison & Northern Railway Company filed a plea to the jurisdiction of the court upon the ground that this was not a regular term of the court, and because, as alleged, under the law, the court has not the power or the right to render a judgment herein, except at a regular term; and for the reasons stated the defendant, the Denison & Northern Railway Company, object to the rendition of any judgment, order, or decree at this time. This plea was on the same day overruled, and the railway company excepted. The railway company on the same day filed exceptions to the master's report, and the attorneys for the plaintiffs filed a reply thereto. The exceptions to the master's report were to the effect that the master did not accompany his report by the testimony, or did not reduce the testimony taken before him to writing. The reply to this plea was to the effect that the attorneys for the railway company were notified to appear, but declined to do so, upon the ground that the railway company was not interested in the matter, and support this reply by affidavit. The court, on the 29th day of October, 898, overruled the exceptions to the master's report, to which order the railway company excepted. The railway company also filed exceptions to the report of the appraisers, upon the grounds: "First. That the report of the appraisers as to the value of the improvements is not a fact judicially ascertained, and cannot be considered as evidence by the court. Second. Because the report is too general and vague to suggest to the court the evidence of value, if any, said appraisers considered in attempting to arrive at the value of said improvements. Third. Because the report does not comply with the order of the court appointing such appraisers and defining their duties. Fourth. Because in said report it is attempted to add $1,000 to the estimated value of such improvements as expenses incurred

by said appraisers, which can in no way be considered as part of the value of said improvements." On the same day, the court, having heard these exceptions, overruled them, and the railway company excepted. Thereupon the court entered a judgment in the case, which is headed in the record. "Final Judgment." This judgment is set forth in the record on pages 61 to 69, inclusive. It is not necessary to set this judgment out in haec verba, but the substantial provisions of it are as follows: First. The cause came on to be heard October 29, 1898, upon the report of the special master in chancery, and upon the report of the appraisers, which reports were respectively approved by the court, and confirmed. The court then proceeded to enter judgment in favor of each of the claimants who proved up their claims before the master for the amounts stated in the report, and against the Mineral Belt Construction Company. There were 26 of these claims. Second. It was then adjudged and decreed by the court that each of said interveners shall have a lien upon all the assets, franchises, and property of the Denison & Northern Railway Company to the extent of the improvements made upon the roadbed of said railway company, as described and defined in the decree made by the court June 2, 1898, and the said lien shall in all things be co-ordinate and co-equal with the liens declared in said decree to exist in favor of plaintiffs herein. Third. The court then formally approved the report of the appraisers, and confirmed the same, finding the cash value of all of said improvements as defined in said decree rendered June 2, 1898, as follows: On the whole 28 miles from Dougherty east, $40,335, and the present cash value of the improvements on the first six miles was found to be $15,370. A further sum of $1,000 was added as the cost of making the appraisement; and that said sum of $1,000 should also be a lien upon the assets of the railway company. Fourth. It was adjudged and decreed by the court that the value of said

improvements and the cost of making the appraisement, as above stated, should be a lien upon all the assets of the railway company, as provided in the decree of June 2, 1898, and that such lien should inure to the benefit of the plaintiffs and interpleaders herein, in proportion to the amounts of their respective claims, which were set forth in detail to the number of 31. Fifth. It was further ordered, adjudged, and decreed by the court that said lien as above described, and as described in the decree of June 2, 1898, be, and the same is hereby, foreclosed in favor of and for the benefit of said plaintiffs and interveners, and the master was directed to proceed to sell all the assets of the railway company described in the decree of June 2, 1898, fixing the time and the place of the sale, and the conditions of payments; bonds to be given for deferred payments. It was further provided that, the plaintiffs and interveners desiring to bid at the sale and become purchasers thereof, the amounts to which they were entitled should be received in part payment. Sixth. It appearing to the court that the Ranney-Alton Mercantile Company and certain other creditors named had filed their cross complaint against Madden & Courtney, interveners, claiming that they had guaranteed the payment of their several debts against the Mineral Belt Construction Company, and it appearing to the court that the allegations in the cross complaints were true, and that Madden & Courtney had guaranteed the payment of such debts, it was adjudged and decreed that the rights and liens declared and ordered to be foreclosed in favor of said Madden & Courtney should inure to the benefit of the last-named plaintiffs and interveners, and that they recover from Madden & Courtney the pro rata of the purchase money of said property which would belong to Madden & Courtney. Seventh. Orders were made for payments of costs, and the judgment concludes in the following words: "In rendering this decree the court adopts the decree ren-

dered herein on June 2, 1898, and at request of attorney for
D. & N. Co. adopts all the evidence offered in support thereof;
to which judgment of the court the defendant, the Denison
& Northern Railway Company, at the time of the rendition
thereof, in open court excepted, and still excepts." A mo-
tion for a new trial was filed on October 29, 1898, the
grounds for which are substantially the same as those con
tained in the motion for a new trial submitted on the judg-
ment of June 2d. On the same day the court overruled
this motion for a new trial, to which order overruling the
motion for a new trial the railway company excepted. And
on the same day, on the motion of the railway company,
the defendant was allowed 60 days to prepare and file its
bill of exceptions, and on the same day an appeal was
granted to the United States court of appeals for the Indian
Territory "from the judgment entered herein at the present
term of this court."

Counsel for appellee insist that the decree rendered
June 2, 1898, was a final one in so far as the establishment
of a lien against the assets of the Denison & Northern Rail-
way Company is concerned; that it was treated by the at-
torneys of the railway company as final; that they filed a
motion for a new trial, which was overruled, and they ex-
cepted, and that they asked for an appeal, which was gran-
ted. Counsel for appellee then submit the following state-
ment, which is found in their brief, pages 7 and 8: "It is
not unfair to them for us to insist that this was a final de-
cree, because it was drawn by them, and endorsed in the
handwriting of one of them, 'Final judgment.' We would
not refer to this fact but for the circumstance that on page
61 of the printed record the order of October 29, 1898, is
called a 'final judgment,' while the decree of June 2, 1898, is
not so styled; the printed record having been prepared under
the supervision of counsel for the railway company." At
the time of the rendition of the judgment of June 2, 1898,

the court and all of the attorneys in the case were evidently of the opinion that the judgment was final. In the judgment itself it is recited that "the cause came on for trial upon the merits". and, further, it is recited in the judgment, "If said railway company shall appeal from this judgment, and shall execute and file a good and sufficient bond herein in the amount of the appraised value of said improvements, then, and in that event, this judgment shall be superseded." Counsel for the railway company filed a motion for a new trial, in which 10 separate grounds for a new trial were set forth. This motion for a new trial was overruled by the court, and on motion of the railway company an appeal was allowed and granted it to the United States court of appeals for the Indian Territory. The designation in the headline of the judgment of October 29, 1898, as a ":final judgment" did not make it such. The headline is no part of the record. It is not a part of the judgment of the court, nor of the pleadings, and, although it is printed in the record, it does not constitute a part of it. Whether a judgment be final or interlocutory depends upon its text, and not upon the opinions of the attorneys, nor even upon the opinion of the court at the time it is entered, outside of the text of the judgment or decree. We must therefore consider the two judgments in view of their respective provisions, in order to determine the point raised by the appellee as to whether the judgment of June 2, 1898, was final, and not interlocutory.

We have considered carefully all the authorities upon this point cited by appellee, and by the attorneys for the railway company in the reply brief. Counsel for appellee cite and comment upon sections 41 to 49, inclusive, of Black on Judgments. It is evident from the decisions in reference to interlocutory and final judgments that much confusion has existed in the minds of the courts and text writers, and there are conflicting opinions upon the subject. This conflict has, perhaps, arisen from the fact that in

*Judgments. Final or Interlocutory*

some jurisdictions appeals are allowed upon interlocutory judgments, while in other jurisdiction—as in the Indian Territory—appeals are allowed only upon final orders, judgments, or decrees. In Section 41 Mr. Black states that many tests of finality have been proposed, some proceeding upon opposite principles, some viewing the same principles in different aspects. Some cases hold that a decree is final when it terminates the litigation between the parties on the merits of the case, and leaves nothing to be done but to enforce by execution what has been determined. Mr. Black states that this principle is perhaps a little too broad, for the reason that it does not impair the finality of the decree that it has to pass through the hands of a master for ministerial acts to be done in relation to it before it is ready for execution. Other cases define a final decree as that which is made when all the material facts in the case have been ascertained so as to enable the court to understand or decide upon the merits of the case. Another authority holds that a decree is final which renders the equities incapable of change in the further progress of the cause, or where nothing remains to be done which may be the subject of exceptions or appeal, or where the decree completely or finally disposes of some branch or part of the case which is separate and distinct from other parts of the case.

Much controversy has arisen in reference to those decrees which, while settling the general equities of the case, leave something for future action or determination, and the true rule seems to be that, if that which remains to be done or decided will require the action or consideration of the court before the rights involved in the decree can be fully and finally disposed of, the decree is interlocutory; but it is none the less final if, after settling the equities, it leaves a necessity for some future action or direction of the

court in execution of the decree as it stands. Black, Judgm. § 41. Counsel for the appellee insist that the decree of June 2d was final, because it settled the equities of the case, so far as the defendant railway company is concerned. Black, Judgm. § 42. In section 44 Mr. Black discusses those decrees ordering a reference to a master in chancery, and, among other things, says: "Second, where a decree ascertains and fixes all the rights of the parties, but a reference is ordered to a master to do or ascertain something that is necessary to carry the decree into effect, if the functions of the master are to be ministerial, and not judicial, or if all the consequential directions depending on the result of the proceedings before him are given in the decree itself, then the decree is final, and not interlocutory." Further reference is made to the following cases: Beebe vs Russell, 19 How. 283; Davie vs Davie, 52 Ark. 224, 12 S. W. 558; Johnson vs Everett, 9 Paige, 636; Hill vs Railway Co., 140 U. S. 52 11 Sup. Ct. 690; Bank vs Sheffey, 140 U. S. 445, 11 Sup. Ct. 755. We have carefully examined all these cases, and from all the authorities it seems well settled that a judgment may be final if it ascertains and fixes all the rights of the parties, although a reference may be made to a master for the purpose of ascertaining facts which are essential to carry the judgment into execution. If the acts of the master are ministerial, and not judicial, or if all the consequential directions growing out of the judgment are given in the decree itself, and may be carried out without further judicial action, the decree is final, and not interlocutory. This brings us to a consideration of the respective judgments of June 2d and October 29th. In the judgment of June 2d there were two references for ascertainment of facts not then before the court,—one to the master, and the other to three appraisers, to be thereafter appointed by the court. The reference to the master was for ascertainment of facts which did not concern the railway company. No

(10)

judgment was to be entered against the company for the amounts to be found by the master. Those were to be judgments against the Mineral Belt Construction Company, and their ascertainment was merely for the purpose of fixing a basis for the distribution of the amounts which should be paid under the lien created against the railway company. But the railway company was interested in the amounts to be ascertained by the appraisers. Were their duties, therefore, ministerial merely, or did they require the confirmation of the court in order to breathe into them the breath of judicial life? If they were to ascertain the value of the improvements or betterments upon the roadbed of the railway company the ascertainment of those values was judicial in its nature, and in no sense ministerial. They were to exercise their judgment, after viewing the premises, as to the value of the work that had been done upon the roadbed of the railway company. As no judicial power could be conferred upon them by the court, their findings had no judicial force, and could be given no judicial effect, until after they had been reported to the court, and confirmed by the court. Hence it was the act of the court confirming the findings of the appraisers that finally fixed the liability of the railway company as to the amounts which it should pay under the judgment of the court. This is apparent from the text of the judgment itself, which provides, among other things, after designating the kinds of persons who were to be appointed as appraisers, as follows: "Shall estimate and value said improvements separately, and report the same to this court; and when so estimated and valued, and the report of said appraisers shall be reported to and confirmed by this court, the defendant, the Denison & Northern Railway Company, within ninety days thereafter may pay or deposit in this court in money the amount or value of the improvements," etc. And further: "And that after said appraisement of said improvements is made as hereinbefore

provided, and reported to and confirmed by this court, if the said railway company shall deposit in this court the appraised value of the improvements," etc. And further: "And after said improvements shall be appraised as aforesaid, if the defendant railway company, within ninety days from the date of the approval of such appraisement by this court, shall fail to deposit in this court in money the value or amount of such improvements," etc. In the event of the failure, the court ordered in the judgment the master to sell all of the property of said railway company. From these provisions, contained in the judgment of June 2d, it clearly appears that the amounts fixed by the appraisers were not to have judicial validity until they were reported to and confirmed by the court. It was not within the power of the court to have given judicial validity to the appraisement in advance of the fixing of the values by the appraisers. The estimation and determination of such values were judicial. The report of the appraisers was merely advisory, and it was the confirmation of the court which gave the appraisement judicial force. The distinction between ministerial and judicial acts may be clearly defined, but courts and counsel frequently fail to discern this distinction. In suits for the foreclosure of mortgages, such as that of Johnson vs Everett, 9 Paige, 636, in which the opinion of Chancellor Walworth, cited in appellee's brief, was given, the consequential directions which were necessary to a final disposition of the cases may all be settled by decrees which are final, although references may be made to masters to ascertain the amount which may be found to be due, together with interest and costs. In such cases the decree is final, for the duties of the master are merely ministerial. Although the amounts due are unknown by the court at the time the judgment is made, yet no discretion is conferred upon the master who is required to ascertain those amounts. He must take the notes and mortgages and compute the amounts due,

and the result is unerring, and requires no judicial discretion. The decrees for the sale of property in such cases are final upon the rights of the parties in the controversy, and leave ministerial duties only to be performed by the master. In such cases the direction is but a consequence of the decree, and no further decree is necessary; but whenever the reference to the master involves judicial ascertainment of indebtedness, after examining evidence for and against, and hearing the contention of counsel, his findings are judicial in their nature, and cannot have judicial force and effect until confirmed by the court; and where references are made in such cases the findings must be confirmed by the court before they can have judicial effect. The first judgment, would, therefore, be interlocutory merely, and the judgment after confirmation would be the final appealable judgment in the case. So of references to appraisers, as in the case at bar. Their findings were strictly judicial. They took the place of a jury, and their report stood before the court in the same position that a verdict of a jury would stand. A judgment on a verdict is necessary to give the verdict judicial force, and so, in the case at bar, a judgment on the findings of the appraisers as to the value of the improvements on the roadbed of the railway company was necessary in order to give those findings judicial force and effect. We are therefore of the opinion that, in so far as the decree of June 2d affected the rights of the Denison & Northern Railway Company, and determined the amount of its liability under the lien declared therein by the court, it was interlocutory and not a final judgment.

This brings us to the consideration of the appellant's assignments of error, which are 20 in number. The first assignment of error is: "The court erred in overruling this defendant's demurrer to plaintiff's complaint for reasons stated in said demurrer, and for the reason that said com-

plaint did not state facts sufficient to constitute a cause of action against this defendant, and did not state facts sufficient to constitute a lien in law or equity against the property of this defendant." The demurrer confessed all the material allegations of the complaint. Hence, in order to determine whether the demurrer should have been sustained by the court or not, we are to consider every statement in the complaint properly pleaded to be true. In the statement of this case above set forth preceding this opinion there is a brief reference to the case of W. S. Crockett et al. against the Denison & Northern Railway Company et al., numbered 2,671, which was begun in the United States Court at Ardmore, September 7, 1895. In order to understand clearly the issues in the case at bar, it is necessary that the facts and disposition of the Crockett suit should be understood. In the Crockett suit, W. S. Crockett, for himself and for the use and benefit of divers other parties, filed their complaint against the Denison & Northern Railway Company, the Title, Guarantee & Trust Company of Chicago, and the Fitzgerald Construction Company, and divers other persons set forth in the complaint. In this complaint it was alleged that the Denison & Northern Railway Company, a corporation created under the laws of Texas, was duly authorized by an act of Congress to transact business in the Southern district of the Indian Territory, and that said company was indebted to the plaintiffs for work and labor done upon said railroad at the special request of the railway company, setting forth the amounts due each individual plaintiff; that said sums were due and unpaid, and the defendant railway company neglects and refuses to pay the same or any part thereof; that the work and labor done by each of those parties were done through the fraudulent representations of the Denison & Northern Railway Company, through its agents, that said company was solvent, and had the money in the bank to pay for said work and labor. But said complaint set forth that

the defendant was wholly insolvent, and that the work done by them was a lien on the assets of the railway company for the sums of money due and unpaid. Numerous acts of fraud are alleged in the complaint. The appointment of a receiver was prayed to take and hold the parcels of land which had been leased by the railway company, the bonds, and right of way, and the muniments of title, and all other assets belonging to or owned by the railway company, and that upon final hearing the plaintiffs severally have judgment against the railway company for the sums respectively due them, and that the property remaining in the hands of the receiver be sold for the payment thereof, and for the costs of suit. Moran Scott was appointed receiver by the court, who qualified, and took possession of the right of way, and all of the assets of the railway company. On February 21, 1896, a petition was filed in the Crockett case, from which we take the following extracts: "Come now W. S. Crockett, Hugh Hardy, C. M. Jones, J. R. Chitwood, creditors of the said defendant, the Denison & Northern Railway Company et al., O. H. Brown, president of said Denison & Northern Railway Company, Moran Scott, receiver of said Denison & Northern Railway Company, and respectfully represent and show to the court: At a previous term of this court the said Moran Scott was appointed receiver of said Denison & Northern Railway Company, with the right to the possession and control of the franchises and properties, and all rights appertaining thereto. That as such receiver he has taken possession of said properties and is now holding the same. That said O. H. Brown, in behalf of himself and said railway company, would respectfully show to the court that since said company was chartered and incorporated they have expended in the development of said road and the resources adjacent thereto a sum aggregating nearly two hundred and fifty thousand dollars (\$250,000). That by the act incorporating them they were, by the conditions of said

act, compelled to complete and have in operation by July 30, 1895, a distance of fifty miles of road. That, acting under said charter, this complainant O. H. Brown, and his associates in the Denison & Northern Railway Company, have purchased the right of way from the individual Indians for a distance of forty-three miles, paying the individual Indians for their interest therein,'' etc. The petition further states that the said Brown and his associates in the Denison & Northern Railway Company had been using every effort to induce capital to invest in said road. But, owing to the facts above set forth, capitalists could not be induced to advance funds necessary for the construction of the road without further protection, and that under existing conditions the railway company was powerless to obtain money to carry on the work to completion. The petition then proceeds to state that Moran Scott, the receiver, represented to the court that he had an offer from the Mineral Belt Construction Company, in which it agreed to bind itself to complete said road in accordance with the profiles on file in the Interior Department at Washington, a distance of 104 miles. That this construction company would thoroughly grade and lay the iron upon said grade, build stations, water tanks, and furnish the road with equipment of cars, locomotives, telegraph and telephone lines, and that said construction company would build the road within 12 months from the signing of its contract, and that it would accept in payment for such work receiver's certificates for the same for eleven thousand dollars per mile, and that they would accept said certificates as the work progressed. That they would pay the present indebtedness against the road, and all expenses of the receivership out of said sum. The petition concludes with the statement that the receiver, joined by other parties thereto, prays the court that he may be authorized to contract with the said Mineral Belt Construction Company in compliance with the terms of this offer. That he be authorized to issue certificates, pay-

able on or before six months after date, with interest at the rate of six per centum per annum from date until paid; "said certificates to be a first lien upon the franchises and appurtenances and all rights pertaining or belonging to the said Denison & Northern Railway Company against any and all liens of any kind or character whatsoever; that the receiver be authorized to at once issue certificates to a sufficient amount to pay the present indebtedness of said company for work and labor done and supplies furnished and expenses incident thereto; making reports to the court at such times as the court may direct as to his actions in the premises."

We have been thus specific in stating the substance of this petition for the reason that it furnishes the basis of the subsequent action of the court thereon, and for the reason that it shows that such subsequent action was at the instance of the Denison & Northern Railway Company, through its president, as well as at the instance of the receiver. This petition was filed, as stated, on the 21st day of February, 1896, and on the 2nd day of March thereafter the court, the Honorable C. B. Kilgore, judge presiding, entered of record an order, the substance of which we will give. This order is doubtless responsible for much of the litigation and contention which has followed. The order begins by stating that Moran Scott, the receiver, comes and represents to the court that he has received an application from the Mineral Belt Construction Company to enter into contract, with the approval of the court, with the receiver for the purpose of building and equipping the Denison & Northern Railroad upon conditions above stated in the petition to the court, obligating itself to build the road as provided in said petition, and to give bond in the sum of $100,000, conditioned upon the faithful compliance with the contract, and that the construction company would "take in payment therefor the receiver's certificates heretofore ordered to be issued by said receiver to the amount of eleven thousand

dollars a mile, taking the same at their par value. It appearing to the court that this application had been heard by the Honorable Edwin Hobby, master in chancery, to whom the case had theretofore been referred, and that his report had been filed recommending that such contract be made, and, it appearing to the court that such a contract would be in all things advantageous to the best interests of all concerned, the said receiver was authorized to make said contract. That the company would give the bond of $100,000, as indicated. The conditions of the bond were then again specifically set forth in the order of the court, which are substantially the same as set forth in the petition already quoted. Additional provisions were added in the order of the court, to be inserted in the contract, in reference to the withholding of certain amounts of the certificates and issuing them as the work progressed. An additional order of court, of the date of April 20, 1896, was entered in this case, in which the form of the receiver's certificates was prescribed as follows: "Receiver's Certificate. No.—— This certifies that, by virtue of an order of the United States court for the Southern district of the Indian Territory, made and entered April 20, 1896, I, Moran Scott, receiver of the Denison & Northern Railway Company, appointed by said court, was authorized to issue debentures or certificates for the construction and equipment of said railway in amount not to exceed eleven thousand dollars ($11,000) per mile for one hundred and four (104) miles of said railway, being a total of one million one hundred and forty-four thousand dollars ($1,144,000), payable January 1, 1897, with interest at the rate of six (6) per cent. per annum from the date hereof; the same to be a lien against all of the rights, franchises, equipments, and appurtenances of any and every kind and character appertaining and belonging to said Denison & Northern Railway Company. This certificate is numbered——, for ——dollars, and issued to——, in accordance with the pro-

visions and conditions of said order of said court, which said order is hereby specifically referred to. Witness my hand and seal, this, the —— day of ——, A. D. 1896. —— ——, Receiver.''

This last-named order of April 20, 1896, was entered of record in the United States court at Ardmore on the 20th day of April, 1896. Said order of April 20th, 1896, provided that: ''Said debentures or certificates of indebtedness, when issued, are hereby declared to be a lien against said Denison & Northern Railway Company, for principal and interest thereof, upon all the rights, franchises, equipment, and appurtenances of any and every kind and character appertaining and belonging to the said Denison & Northern Railway Company, with the right and priority over all other claims except those of complainants in this cause. Said debentures or certificates shall be made to fall due and become payable by said Denison & Northern Railway Company January 1, 1897, with interest from date at the rate of six (6) per centum per annum; and, in the event of the failure of the Denison & Northern Railway Company to take up the said debentures or certificates, or to pay the principal or interest thereof when they shall have become due, any holder of one or more of said debentures or certificates, in behalf of himself and all other holders of said debentures or certificates, may bring suit thereon to compel the payment thereof, and in default of payment to enforce the lien against said Denison & Northern Railway Company.'' The order of April 20, 1896, modified in several material respects the order of March 2, 1896, and those modifications were made at the instance of J. C. Beeks, an attorney of the Denison & Northern Railway Company. Testimony shows that Mr. Beeks prepared the order of April 20, 1896, and at the bottom of the order signed by Judge Kilgore, and as it appears on page 341 of the record, are the words, ''O. K. C. B. Kendrick, J. C. Beeks.'' Mr. Kendricks was the attor-

ney for the plaintiff in the Crockett suit. The railway company in the case at bar contends that J. C. Beeks was not authorized by the railway company to bind the company as to the matters contained in the orders of court of March 2, 1896, and April 20, 1896. But it appears that he was employed to represent the railway company in that suit. The contract to build the railroad as provided in the orders of court was made by the receiver with the Mineral Belt Construction Company, and thereupon the business of constructing a railroad under the direction of the court was entered upon. About 28 miles were graded, and work and labor and materials were furnished, and receiver's certificates issued therefor. The construction company proved to be insolvent. The receiver's certificates could not be longer used for procuring credit. The report of the appraisers appointed in the suit at bar showed that the roadbed of the railway company had been made, or had received betterments, to the amount of over $40,000, and the suit at bar is for the purpose of enforcing a lien upon the assets of the railway company for an amount equal to the betterments placed upon the road, to be paid pro rata to persons who furnished materials and supplies in the construction of this railroad.

As heretofore stated, the Crockett suit was dismissed by the court, Honorable Hosea Townsend being the judge then presiding, having been appointed to succeed the Honorable C. B. Kilgore, deceased. The order disposing of the Crockett suit was based upon a plea to the jurisdiction of the court, filed by William J. Scott, counsel for the Denison & Northern Railway Company, on the "5th of February, 1898, as of September 4, 1896." There is no explanation in the record of the fact that this plea was to be filed as of a previous date to its actual filing. It was stated in this plea that the Denison & Northern Railway Company appeared only for the purpose of submitting that plea, which was based upon the alleged

grounds that the court was wholly without jurisdiction of the person or estate of the defendant railway company, and that the complaint does not state facts sufficient to warrant the exercise of the equitable jurisdiction of the court; that no notice was served on defendants or their agents, or any officer of the railway company; that the court was without jurisdiction to take from the railway company its franchises and assets, and place them in the hands of a receiver, and to authorize the receiver to make the contract with the Mineral Belt Construction Company; that the appointment of the receiver and the making of the contracts were unauthorized, either in law or in equity, and were wholly null and void, and of no force or effect. The plea sets forth that the appearance of Brown as president of the Denison & Northern Railway Company, and who entered the appearance of the railway company in the Crockett suit, was wholly unauthorized, and without the knowledge or consent of the said railway company, and that said Brown was not the president of said railway company. The plea concludes with a prayer to the court to set aside and hold for naught all the orders and proceedings in the Crockett case for the reasons set forth in the plea, and for the further reason that they were procured by the false and misleading statements of the Mineral Belt Construction Company. The order of the court sustaining this plea is to the effect that the court, having heard the same, "is of the opinion that said plea should be, and the same is hereby, sustained; and it appearing to the court that neither the original or amended complaints in equity state facts sufficient to constitute a cause of action in equity, and entitle the plaintiffs to the relief therein prayed for, it is therefore considered, adjudged and decreed by the court that said complaints be, and the same are hereby, dismissed from the docket of this court for the reason that this court has no jurisdiction of the subject-matter thereof; that all orders and decrees heretofore made herein be, and the same are hereby, set aide, canceled and held for naught; and that the

receiver heretofore appointed herein be, and he is hereby, discharged.''

We have endeavored to state all the material facts in reference to this most remarkable case, for the reason that the case at bar cannot be properly understood or correctly disposed of without a thorough understanding of the Crockett case. The complaint in the case at bar sets up the Crockett case, and the appearance of the railway company in that case, as the basis of the plaintiff's right to recover. Notwithstanding the dismissal of the Crockett suit by the court, and the judgment of the court that all the orders in that case were null and void, yet the plaintiff in the case at bar insists and alleges in the complaint that the Denison & Northern Railway Company was a party to said suit, and participated therein, and procured said orders to be made; that all the officers of the Denison & Northern Railway Company were aware of the fact that said orders were being made, and that said Mineral Belt Construction Company was procuring goods, wares and merchandise to be used by it in the construction of said railway upon the faith of the orders made by the court; and that a lien had been created and existed in favor of the plaintiff and the Mineral Belt Construction Company to secure the payment of said goods, wares and merchandise; and that by reason thereof the railway company became liable and bound to pay for said goods, wares and merchandise, and consented and agreed to the creation of the lien upon its property, These facts were alleged in the petition, and for the purpose of the demurrer must be conceded as true. If it be true that the railway company procured the orders to be made in the Crockett suit whereby the receiver was authorized to make a contract with the Mineral Belt Construction Company for the building of a railroad, and if it be true that the railway company agreed that a lien should be created to exist in favor of the persons who furnished such supplies, and in favor of the Mineral Belt Con-

struction Company, to the amount of the receiver's certificates which were issued, the railway company is estopped from disavowing its liability, notwithstanding the court may have been without jurisdiction to make the orders in question. The judgment of the court in the Crockett case sustaining the plea to its jurisdiction did not affect the liability of the railway company, which it had, in effect, assumed by its connection with the litigation. The judgment of a court, in order to be conclusive as an estoppel, must have been rendered upon the merits of the case, and upon the same subject-matter. Inhabitants of Embden vs Lisherness, 89 Me. 578, 36 Atl. 1101. A former judgment is not binding on the parties in a subsequent action by way of estoppel in any question of fact unless it appears from the judgment, or by extrinsic evidence, that such question was within the issues of the former action, and was actually litigated and determined therein. Augir vs Ryan, 65 N. W. 640, 63 Minn. 373. See, also, Snyder's Adm'rs vs McComb's Ex'x (C. C.) 39 Fed. 292; Donahue vs McCosh, 81 Iowa, 296, 46 N. W. 1008; James vs Sterrett, 137 Pa. St. 234, 20 Atl. 655; Davis vs Sexton, 35 Ill. App. 407; and other cases cited in 3 Gen. Dig. (N. S.) 1897, p. 829. The judgment of the court below dismissing the Crockett suit was based upon the contention that the court was without jurisdiction to make orders in that case which provided for the building of a railroad, and that all such orders were null and void. The correctness of that judgment is not involved in this suit. It may be conceded in this case that the court in the Crockett case had exceeded its jurisdiction,—had attempted to lend its aid and give its judicial sanction to the building of a railroad, which was merely a private enterprise,—and that all its acts in that respect were null and void; but nevertheless the railway company, if it participated in those orders, and agreed that the work should be done, is estopped from denying its liabilities for the benefits which it received in pur-

<em>Estopped.</em>

suance of such extrajudicial orders. The issue in the case at bar is not whether the court had authority to make the orders, but whether the acts of the defendant railway company in connection with those orders were such that it is now estopped from denying its liability for any benefits which it derived from them. This question was not adjudicated or passed upon by the court below when it sustained the plea to its jurisdiction and dismissed the Crockett suit. Counsel for appellant state in their brief that by a careful examination of the complaint and the exhibits attached thereto it will be seen that the plaintiff nowhere alleges that it is the holder and owner of receiver's certificates issued by the receiver to the Mineral Belt Construction Company in accordance with the order of the court. But counsel contend that the allegations in the complaint show that the only lien, if any, the construction company ever had, was fixed by the issuance and delivery to it of receiver's certificates for the construction of the railroad. The complaint alleges that the Mineral Belt Construction Company is indebted to the plaintiff, the Ranney-Alton Mercantile Company, in the sum of $17,500 for goods, wares, and merchandise furnished the construction company in the building of the Denison & Northern Railroad and that it was the understanding and agreement between the Denison & Northern Railway Company and the construction company that the receiver's obligations were to be used by the construction company in order to obtain supplies for the construction of the railroad, and that such goods were furnished the Mineral Belt Construction Company by pledging receiver's certificates therefor, and that it was agreed between the construction company and the railway company that the construction company was to have and to hold a lien upon the roadbed, right of way, and franchises of the railway company against the railway company and its property, and that the railway company and its

property should be pledged and transferred to the parties
from whom credit was obtained for supplies, as aforesaid,
and that by virtue of these agreements the Mineral Belt
Construction Company obtained the goods and supplies, for
which plaintiff brings its suit, and they allege that they
were to have a lien against the railway company and its
property for such goods, wares, and merchandise. A lien
was not only alleged in behalf of the Mineral Belt Company,
but also in behalf of those who furnished supplies and per-
formed labor under what is known as the Bracy, Lampson
& Chapman contract, and that those persons were to have a
lien from the railway company. Counsel for appellants
cite the case of Slack vs Collins, 42 N. E. 910, in which the
supreme court of Indiana sustained the demurrer to the
complaint in that case, but that case does not seem to be in
point. The verbal agreements in reference to liens upon
real estate are not comparable to the lien which was set forth
in the complaint in the case at bar. While the court was
acting without jurisdiction, yet all its proceedings were
matters of record, and a court of equity will place such pro-
ceedings upon the highest plane of obligations entered into
between individuals. During the progress of the work in
constructing the railroad all persons concerned presumed
that the court had jurisdiction, and relied upon the faith of
the judicial procedings in order to secure them for the sup-
plies furnished and labor performed. Justice and good con-
science require that liens created under such circumstances
should be enforced in courts of equity. The complaint in
the case at bar not only set forth evidence sufficient to con-
stitute a cause of action, but also set forth evidence showing
that the railway company, by its attorneys, participated in
the making of the contract with the Mineral Belt Construc-
tion Company, and that the president of the railway com-
pany and all the directors and officers thereof were aware
of the fact that the orders above set forth providing for the

construction of the railroad, were being made, and they were aware of the fact that the goods, wares, and merchandise to be used in the construction of said railroad were being procured upon the faith of the orders made by the court, and that a lien had been created and existed in favor of the plaintiffs and the Mineral Belt Construction Company to secure the payment of the same. The court did not err in overruling the demurrer to the complaint.

The appellant's second assignment of error is as follows: "The court erred in overruling the plea of this defendant in bar of the plaintiff's action for reasons stated in said plea, the proof having shown, if the plaintiff ever had a cause of action against this defendant or its property, the same was passed upon and finally adjudicated adverse to plaintiff by this court in case No. 2,671, entitled and styled 'W. S. Crockett et al. vs the Denison & Northern Railway Company et al.,' recently pending on the equity docket of this court." Counsel for appellant, in their brief, submit numerous authorities in support of this assignment of error, among them the cases of Mercantile Trust Co. vs Kanawha & O. Ry. Co. (decided by the circuit court of appeals for the Sixth circuit) 58 Fed, 15; Union Trust Co. vs Illinois M. Ry. Co., 117 U. S. 434, 6 Sup. Ct. 809; Swann vs Clark. 110 U. S. 602, 4 Sup. Ct. 241; Gordon vs Newman, 10 C. C. A. 587, 62 Fed. 686; and several other cases. Relying upon these authorities as in point, counsel for appellant contend: "That the plaintiff in this case, to have availed itself of any right growing out of the litigation in the Crockett case, must have procured an order of that court in that case at the term of court, before final decree rendered authorizing or allowing the plaintiff to present such claim, and that, failing to do so, all rights, if any the plaintiff had, have been finally adjudicated in the case of Crockett against the railway company." The authorities cited are not applicable

(11)

to the case at bar.   The court in  the Crockett  case had  no
jurisdiction  over the  subject-matter,  and had no  power  to
authorize the  contract for  the building of  a railroad  to  be
made, or  to authorize  the issuing  of the  receiver's  certifi-
cates.     The orders  made  by  the  court were null and void.
The plaintiff in this case  does not rely upon  the validity of
the orders of the  lower court,  but upon the  acts  and  con-
duct of the railway company,  which  it contends  were  such
as to render it liable for the betterments which  it secured to
itself by the orders  which the court made.   It is  untenable
to contend that  it was the  duty of the  plaintiff,  before the
final  dismissal  of  the  Crockett  suit,  to  present  its claim
against the railway company; and, failing to do so, its rights
were finally  adjudicated by the  order dismissing  that suit.
We have already  shown that  the matter  sought  to be  liti-
gated in the pending  suit was not an  issue in  the  Crockett
suit, and that the  plaintiff's rights are  not prejudiced,  and
have not been adjudicated by the action of  the court in  the
Crockett case.

Former judg-
ment. No bar.

The appellant's third assignment of error is as  follows:
"The court erred in  holding  that  to  the  extent  improve-
ments  have been  made  upon  the  line  of  this  defendant's
railroad,  that those  who did  work  upon and   furnished
material and  supplies which  went into the  construction  of
such improvements had and have a lien against the property
of this defendant to the extent of  the  present cash value  of
such  improvements  to this defendant for  railroad  purposes;
the record and proof having shown that the plaintiffs herein,
nor any other persons,  ever attempted  to assert or fix a lien
upon  the  property   of this  defendant for  work  done  or
material or supplies furnished this defendant under written
or  verbal  contract,  according  to  chapter  96  of  Mans-
field's Digest of the Statutes of  Arkansas, adopted and  put
in force in the  Indian Territory  by act of  congress."   Ap-
pellant's fourth assignment of  error involves the same legal

proposition, and both assignments will be considered together. It is as follows: "The court erred in holding that the plaintiff and the interveners herein have a lien against the property of the defendant, the Denison & Northern Railway Co., to the extent of the present cash market value of the roadbed of said company as constructed by the Mineral Belt Construction Company and by the firm of Bracy, Lampson & Chapman, for the reason that the evidence shows that Bracy, Lampson & Chapman acquired no lien, legal or equitable, against the property of this defendant, as a result of the within contract between said firm and said railway company to construct its road, and because the evidence shows that the Mineral Belt Construction Company, under its contract with Moran Scott, as receiver of the D. & N. Ry. Co., acquired no lien, legal or equitable, against the property of this defendant." These two assignments of error present the principal issue involved in the case at bar. The object of the plaintiff and interveners is to enforce a lien for labor and supplies furnished for the benefit of the defendant railway company, and the foreclosure of such lien, and the sale of the property of the railway company to satisfy their demands to the extent which their labor and supplies benefitted the defendant. The court below held in its decree in this case that the plaintiff and interveners have and hold a lien upon the assets, franchises, and property of the railway company to the extent of the improvements made upon the roadbed thereof; that the value of such improvements was $41,000, and that such lien should inure to the benefit of the plaintiff and interveners in proportion to the amounts of their respective claims; that said lien should be foreclosed in favor of and for the benefit of said plaintiff and interveners, and that the property should be sold to satisfy the same. If the court below did not err in making this decree, its judgment should be affirmed. Appellant's fifth, sixth, seventh, eighth, and

ninth assignments of error are based upon special features arising in the case, and need not be given. They will be disposed of in the consideration of the third and fourth assignments of error.

The appellant's contention in regard to this branch of the case is set forth in their brief on pages 69, 70, and 71. In order that there may be no misunderstanding as to the appellant's position, we will quote its contention as set forth by counsel in their brief. It is as follows: "We candidly submit to the court that the evidence in this case shows: First. That the railway company never entered into a contract with the plaintiff to pledge its property, or any part thereof, as security for the payment of the indebtedness sued on, and never agreed to be personally responsible for such indebtedness, and therefore the plaintiff cannot recover a personal judgment against the defendant company, and a fortiori cannot fix a lien upon its property to the amount of such indebtedness. Second. That the evidence in this case shows that not only a lien in equity does not exist in favor of plaintiff, but shows that under the facts relied upon by plaintiff to establish such lien that no such lien could exist on account of a verbal promise, which the evidence shows was not made to and relied upon by the plaintiff. Third. That no estoppel arises from the evidence in this case in favor of plaintiff, inasmuch as the plaintiff itself has shown it did not rely upon any act, declaration, or representation made by the railway company. Fourth. That the railway company is not bound by any declaration or act of its president or attorney, if any were ever made, to pledge its property for the security of the payment of the debt herein sued on, because such declarations were not made within the scope of the authority of such president or attorney, and because the ownership of the property of the railway cannot be frittered away by the unauthorized declarations of its officers, agents, or employes,

or by its attorney, or by its individual directors acting individually, or by the individual members of its executive committee who act without authority, and not pursuant to authority specially conferred upon them. Fifth. Inasmuch as the plaintiff relies for recovery upon the orders of the court in the Crockett case, and upon the validity of receiver's certificates issued in pursuance to such orders, and was, under the law, a privy to such proceedings, and a party thereto, we submit that, under the authorities cited supra, that all the rights, if any, the plaintiff has or ever had, were finally adjudicated in the final decision rendered and entered in the case of W. S. Crockett et al. vs. The Denison & Northern Railway Company et al." Appellant's contention that the railway company never entered into a contract with the plaintiff, as set forth in its first contention above mentioned, is not responsive to the real issue in the case. The plaintiff does not contend that it made a contract with the railway company. The plaintiffs general manager, Mr. Hill, testified that the goods of the Ranney-Alton Mercantile Company were sold to the Mineral Belt Construction Company on a credit upon security of the orders of the United States court, which orders were made in the receivership proceedings, and that by the terms of those proceedings and orders all persons who made advances in the way of labor or supplies to the Mineral Belt Construction Company were to have a lien on the assets of the Denison & Northern Railway Company. He further testified that he did not rely upon the bond which the Mineral Belt Company gave as additional security, but upon the orders of the court referred to. We have heretofore set forth at considerable length the orders of the court in the Crockett case out of which the issues in the present case have arisen. The promises made by the railway company were not verbal promises, as intimated in the second contention of counsel for appellant. They were embodied in the pleadings in open court. "It

Lien. Express contract unnecessary.

seems to be a general rule that an admission made in open court, or in the course of pleading, whether in express terms or by omitting to traverse what has been before alleged, must be taken as conclusive for all purposes of the cause, whether the facts relate to the parties or to third persons." See 11 Am. & Eng. Enc. Law (2d Ed.) p. 447, and numerous authorities therein cited. It does not militate against the force and effect of such admissions that it was afterwards held that the court at the time had no jurisdiction of the subject-matter of the controversy. What was done was done with judicial sanction and solemnity, and all parties concerned are bound thereby.

The fourth contention of counsel for appellant is that the railway company is not bound by any declarations or act of its president or attorney to pledge its property as security for the debt sued on in this case, because such declarations were not made within the scope of the authority of such president or attorney. It is an undisputed fact in the case at bar that O. H. Brown was the duly-elected president of the Denison & Northern Railway Company, and this court is of the opinion that, upon the evidence in the case, James G. Beeks was an attorney of the railway company at the time these orders were made in the Crockett case. Mr. Beeks was a lawyer. He was employed to look after this case for the railway company, as testified to by Mr. Childs, who states "that he was employed by the executive committee of the railway company first to prepare its mortgages in 1895. Afterwards we employed him to represent the Denison & Northern Railway Company in the receivership case." And further: "Mr. Beeks went there to represent the Denison & Northern Railway Company, and was employed by us for that purpose. I know, because I employed him." And, further, Mr. Childs stated: "Don't know just what orders were modified or changed by Mr. Beeks, except that he represented to me that he objected to the form of some of

the procedure, and caused them to be changed. The exact change made I cannot now just remember." Mr. O. H. Brown was the president of the company, but it does not appear that he was given any authority by the board of directors to represent the company, but it does appear that he was regularly served with process, and, further, that he entered the appearance of the railway company in the case, and acquiesced in the proceedings therein. It appears from the record in the Crockett case that Moran Scott, the receiver, and the Denison & Northern Railway Company, and the Mineral Belt Construction Company made an application to the United States court for authority to build the road by issuing receiver's certificates. This application was made February 21, 1896. The first order made in reference to this application was made on March 2, 1896, and entered of record. To this order, as presented, Mr. Beeks filed a statement on the 6th day of April thereafter, in which he took exceptions to many of the provisions thereof. The court thereupon, on April 9th, referred Mr. Beeks' protest and the answer thereto by Mr. Brown to the master in chancery, and on the 17th day of April thereafter the master submitted his report thereon. On the 20th day of April the court modified the order, adopting some of the recommendations of the master and some of the suggestions of Mr. Beeks, but adhered to the principal provisions of its first order in the case. Mr. Beeks prepared this order of April 20th, and united with Mr. Kendrick on the record by O. K.'ing the order. Counsel for appellant contend that the railway company was not bound by Mr. Beeks' acts in the premises, for the reasons: First, that he merely submitted to the judgment of the court, and prepared an order in accordance with the court's opinion; and, secondly, that he had no authority from the company to agree to the creation of a lien against the property of the railway company as provided in the court's order. The fact that this order of April 20, and the

previous order of March 2, 1896, had been made was known
to the directors and leading stockholders of the Denison &
Northern Railway Company.  Mr. Childs, who is the largest
stockholder, and a member of the executive committee, and
vice president of the company, states that Mr. Beeks re-
ported to him that he objected to the form of some of the
procedure, and caused it to be changed; and, further, Mr,
Childs testified:  "All of the directors know that O. H.
Brown has entered his appearance in the case of Crockett
against the Denison & Northern Railway Company, and
some time in January, 1897, at the directors' meeting, they
passed a resolution disclaiming his authority."  Mr. Childs
further testified in regard to Mr. Beeks as follows:  "After
going to Ardmore, I. T., he made me a full report of all the
proceedings in the case."  And Mr. Childs makes the follow-
ing statement:  "My understanding was that the contract
to build the road as indicated was made under the direction
of the court in which the receivership case was pending, and
that certificates were to be issued in payment for same.
These certificates I understood would be a first lien on the
roadbed and properties of the company.  I got this informa-
tion from the copy of the contract sent me by Mr. Beeks.
He also made a complete report to me after his trip to Ard-
more."  This report to Mr. Childs, who was vice president
and a member of the executive committee of the railway
company, must have been submitted in April, 1896, but the
railway company did not disavow Mr. Brown's acts until
January, 1897.  There is no evidence in the record showing
when, if ever, the railway company repudiated or disclaimed
the acts of Mr. Beeks.  The contention of counsel in regard
to him is that his acts extended beyond the scope of his au-
thority.  It may be assumed in this case that both Mr. Beeks
and Mr. Brown acted outside and beyond the scope of their
authority, but was there not an implied ratification of the al-
leged unauthorized acts of the president and attorney of the

railroad company in this case?   "The ratification of an unauthorized act is effective more frequently by implication from the acts and conduct of the person in whose behalf the act is done, inconsistent with any intention other than the adoption of such act, than by express words, the ratification being inferred from circumstances which the law considers equivalent to an express ratification." See 1 Am. & Eng. Enc. Law (2d Ed.) p. 1195.   Slight circumstances and small matters will sometimes suffice to raise the presumption of ratification.   Byrne vs Doughty, 13 Ga. 53.   Where a principal, when informed of a purchase by his agent, did not deny the agent's authority, but merely complained of the manner in which it was executed, it was held that he was bound.   Johnson vs Jones, 4 Barb. 369.   "Implied ratification most frequently arises from the acceptance of the benefits which are the result of the unauthorized acts, for where one, with full knowledge, receives profits or benefits, he may be presumed to have ratified and accepted the conditions by which they are effected."   1 Am. & Eng. Enc. Law (2d Ed.) p. 1197, and numerous authorities therein cited, among them from the state of Arkansas, Kelly vs Carter, 55 Ark. 112, 17 S. W. 706; Pike vs Douglass, 28 Ark. 59; Daniels vs Brodie, 54 Ark. 216, 15 S. W. 467.   Ratification of unauthorized acts of agents is implied whenever the acts and conduct of the principal, having full knowledge of the facts, are inconsistent with any other supposition than that of a previous authority, or an intention to abide by the act though it was unauthorized.   Taylor vs Association, 68 Ala. 229.   The acceptance of the proceeds of a loan, or of the benefits thereof, though made without authority, has been held a sufficient ratification.   Union Gold-Min. Co. vs Rocky Mountain Nat. Bank, 96 U. S. 640.   When an agent, without the authority or knowledge of his principal, borrows money, and applies it to the payment and discharge of the legal liabilities of his principal, and the principal knowingly re-

tains the benefit of such payment, the lender may recover therefor in an action against the principal for money had and received.    Perkins vs Boothby, 71 Me. 91. So a corporation which retains and uses money borrowed for it by an officer without authority ratifies the loan. Willis vs Sanitation Co., 53 Minn. 370, 55 N. W. 550. ''As a general rule, silence on the part of the principal for a length of time without a sufficient excuse or explanation will amount to a ratification of the acts of an agent, especially where such acquiescence has a tendency to mislead the agent.'' ''The principal should disavow the unauthorized act within a reasonable time. The question will depend upon the circumstances of each case.'' See 1 Am. & Eng. Enc. Law (2d Ed.) p. 1203, and numerous authorities therein cited. And in the same work (page 1207) it is stated: ''The principle of ratification by silence is applicable to corporations in the same manner as to natural persons.'' When the president of a corporation executes in its behalf, and within the scope of its charter, a contract which requires the concurrence of the board of directors, and the board, knowing that he has done so, does not dissent within a reasonable time, it will be presumed to have ratified his act. Pittsburgh, C. & St. L. Ry. Co. vs Keokuk & H. Bridge Co., 131 U. S. 371, 9 Sup. Ct. 770.

In view of these authorities we are of the opinion that whether Brown and Beeks transcended their authority from the railway company or not is immaterial. It is clearly shown that the railway company was cognizant of their acts and conduct; that it was officially informed thereof by Mr. Beeks, who made a complete report of all that was done in the Crockett case, and by the further fact that the railway company has received the benefits which resulted from their alleged unauthorized acts. After receiving such benefits, which have been valued by the appraisers to amount to $41,000, the railway company is presumed to have ratified and accepted the conditions under which such benefits and

profits were obtained. They are now estopped from denying their liability to pay for the benefits which they derived. Assuming, therefore, that Brown and Beeks represented the railway company, or that the railway company is now responsible for their acts, having received the benefits resulting from their alleged unauthorized acts, it is liable for the contracts entered into by them, or at their instance. The court authorized the contract to be made with the construction company, and the making of this contract was at the instance of the railway company, as well as the other parties concerned. Mr. Pomeyor, in his Equity Jurisprudence, (volume 3, § 1237), states the rule as to equitable liens as follows: "The form or particular nature of the agreement which shall create a lien is not very material, for equity looks at the final intent and purpose, rather than at the form; and if the intent appears to give, or to charge, or to pledge property, real or personal, as a security for an obligation, and the property is so described that the principal things intended to be given or charged can be sufficiently identified, the lien follows. Among the kinds of agreements from which liens have been held to arise the following are some important examples: Executory agreements, which do not convey or transfer any legal estate in the property, but stipulate that the property shall be security, or which pledge it for the performance of the obligation." The form of the <span style="float:right">Equitable lien.</span> contract by which an equitable lien is created is immaterial. Equity does not quibble over the difference between contracts which are express and those which are implied. It looks only to the substance, and not to the shadow; it looks to the intention of the parties, and will give effect to such intention. There can be no doubt, upon reading the record of the court in the Crockett case, as to what the intention of the parties was. The advances of the plaintiff were directly for the benefit of the railway company. They were made on the promises of the company, through the orders of the

court, that they should be a lien upon all the property of the railway company. Those materials and supplies were converted into improvements and betterments of the railroad, which improvements were permanent and beneficial to it, and which were made by it in good faith, with the knowledge and approbation of all the parties interested, and accepted by them, and they are entitled to compensation therefor. The plaintiff's right to remuneration is clear, and, unless the remedy sought for in this action is given, there will be a total failure of justice. See the opinion of Judge Danforth in the Court of Appeals of the state of New York, stated in volume 1, § 39, in the work of Mr. Jones on Liens. In Bell vs Pelt, 51 Ark. 438, 11 S. W. 685, it was held by the Supreme Court of Arkansas that: "An attempt to create a security in legal form having failed, equity will give effect to the intention of the parties, and enforce the lien as an equitable mortgage. Any agreement that shows an attempt to create a lien is in equity a mortgage." In 1 Ror. R. R. pp. 651, 652, the author states the rule as to corporations as follows: "Railroad companies are estopped in like manner as natural persons. It is a well-settled principle of law that the doctrine of equitable estoppel, or estoppel in pais, by which one represents to another a certain state of facts, and thereby induces him to act upon the faith of their existence, is concluded or estopped from afterwards denying the truth thereof against the person so acting on the faith of the same, when such denial will result in the injury of the person so confiding in such representations,—is as applicable to railroad corporations and other corporate bodies as it is to natural persons." The mere fact that the acts and conduct of the defendant railway company, the Mineral Belt Construction Company, and others, were embraced in certain orders, judgments and decrees of the United States Court, and that such judgments, orders and decrees were afterwards declared by the court to be without authority, and

null and void, does not change or avoid the liability of the parties to the transaction. If we eliminate from the transactions of the parties everything that the court did in the Crockett case, the liability of the defendant railway company is not changed or modified, so far as the plaintiff and interveners are concerned. Let us suppose, for the sake of the argument, that Mr. Brown and Mr. Beeks, and the parties composing the Mineral Belt Construction Company, and Mr. Moran Scott, the receiver, and the judge of the court acted as private individuals, and had met and entered into the contract which was made in this case; and let us suppose further, that in pursuance of this contract 28 miles of the roadbed was graded and prepared for the use of the company at an expense, as is alleged in this case, of $80,000, and that it had been ascertained by the parties, through their agents, appointed by them, that this expenditure had resulted in the betterment of the railroad to the extent of $40,000, and that those betterments were placed upon the railroad with the knowledge of the railway company and its officers, and without any dissent on their part while the work was in progress,—would it be contended that the railway company would not be liable, to the amount of the value of the betterments it had received, to the persons who had created those betterments? And would a court of equity not hold the railway company to the contract, and decree, after a proper hearing, that the persons who furnished supplies and labor and material for the making of those improvements and betterments were entitled to an equitable lien upon the property of the railway company to secure their payment? If we eliminate entirely everything that the court did in the Crockett case, and leave all parties to the liabilities and obligations which they incurred by their own acts and conduct, a court of equity will do justice between the parties, and will not permit the beneficiary of the contract to accept the benefit thereof, and repudiate its obligations to pay for them.

The court below did not err in decreeing that the railway company was liable to the persons furnishing supplies and performing labor to the extent which that labor and those supplies had bettered the property of the company, and the court did not err in decreeing a lien on the property of the railway company to the extent of such betterments, and in foreclosing the same.

We have carefully considered all the authorities submitted by the learned counsel for the appellant in their brief in this case, but the authorities do not, in our judgment, apply to the case at bar. The appellant's tenth assignment of error is as follows: "The court erred in overruling the plea of this defendant to the jurisdiction of the court to hear and pass upon the report of W. F. Bowman, special master, and the report of the appraisers, and to enter final judgment herein on the 29th day of October, 1898, for reasons stated in said plea, to-wit: That the court had no power or right to hear, pass upon, and enter final judgment in this case except at a regular term of this court, and because no regular term of the court was held on said 29th day of October, 1898; and the court, in passing upon the cause on that day, and rendering final judgment herein, was but acting in vacation." This contention of counsel is untenable. The act of March 1, 1889 (25 Stat. 784, § 7), which is still in force in the Indian Territory, provides: "That two terms of said court shall be held each year at Muskogee, in said territory, on the first Monday in April and September, and such special sessions as may be necessary for the dispatch of the business in said court at such times as the judge may deem expedient, and he may adjourn such special sessions to any other time previous to a regular term." The act of May 2, 1890 (26 Stat. 94, § 30), provides: "The judge of said court shall hold at least two terms of said court each year in each of the divisions aforesaid, at such regular times as said judge may fix and determine." Construing these two statutes together, it

*Terms of court.*

is evident that there must be at least two regular terms of court in each district every year, and that the judge may establish as many special sessions in addition thereto "as may be necessary for the dispatch of the business in said court, at such time as the judge may deem expedient."

The appellant's eleventh assignment of error is to the effect that the court erred in overruling the exceptions to the master's report, for the reason that the master did not accompany his report with the evidence heard by him, and upon which he based his conclusions. The defendant railway company was not interested in the report of the master. Its attorney was notified, and declined to appear at the taking of the testimony. The defendant will not now be permitted to take exceptions to the master's report upon this question. If the railway company had appeared at the taking of the testimony, and there demanded that it should be taken down, and if, when presented to the court, it had taken exceptions to the fact that it was not in writing, this assignment would be well taken, for it is the duty of the master to take down the evidence before him upon which he bases his conclusions, and report the same to the court; and, when timely exceptions are taken for failing to do so, the error would be a ground for reversal.

*Exceptions to master's report.*

Appellant's twelfth assignment of error is based upon the fact that the court overruled the railway company's exceptions to the report of the appraisers, and adopted the report of said appraisers. The evidence in this case shows that the appraisers were appointed at the instance of the court for the purpose of ascertaining the value of the improvements which were made upon the property of the railway company. The counsel contend that their acquiescence in the order appointing the appraisers was only in reference to the personnel of the appraisers. Assuming this to be true, it nevertheless appears that no exceptions were taken

at the time to this manner of ascertaining the value of the improvements. If the railway company had excepted upon the ground that the value of those improvements involved a question of fact of interest to the defendant railway company, and that such question of fact could only be ascertained and determined by reference to a jury, and the court had refused to submit the question to a jury, the defendant would be entitled to a reversal of the judgment of the court in this case. But no exception of that kind was taken. The appraisers were doubtless, from their peculiar qualification, more competent to fix the value of those betterments than would a jury have been. It is not shown that the value fixed by those appraisers was not a true or just value. Hence, we cannot see that the railway company has been prejudiced in the least by the appointment of the appraisers, and no error can be assigned on account of the action of the court in this respect.

*Appraisement of betterments.*

The thirteenth and fourteenth assignments of error relate to allowances of costs in the case. These allowances were in the discretion of the court, and no error can be assigned thereon, unless it appears that such discretion has been abused. The court did not err in this respect, as those costs were incident to the proceedings, and the costs were properly taxed.

*Allowance of costs.*

The appellant's sixteenth assignment of error is as follows: "As the plaintiff herein had and has no personal judgment herein against this defendant, the court erred in its said decree of October 29, 1898, in fixing and foreclosing a lien against the franchises, corporate existence, etc., of this defendant, and in directing the sale thereof." The trial court in the case at bar, in decreeing a lien against the franchises of the railway company, was merely following the order of Judge Kilgore in the Crockett case of April 20, 1896, which was prepared by Mr. Beeks. As hereinbefore

*Lien on franchises.*

stated, it was provided that the receiver's certificates were declared to be a lien "upon the rights, franchises, equipments, and appurtenances of any and every kind and character pertaining and belonging to the said Denison & Northern Railway Company." As we have held heretofore, the railway company was a party to this agreement, and it cannot now complain that the agreement which it made should not be carried out to the extent of the fixing of a lien even upon its franchises.

The seventeenth and eighteenth assignments of error relate to the admissibility of evidence. The court did not err in admitting the testimony, or, if error, it was not prejudicial to the defendant railway company.

Appellant's nineteenth and twentieth assignments of error are in reference to the overruling of defendant's motions for a new trial of June 3 and October 29, 1898. There was no error in overruling these motions for a new trial, in view of the position this court holds in regard to the other assignments of error. The contract entered into between the Denison & Northern Railway Company and Bracy, Chapman & Lampson was entered into on the 18th day of April, 1893, and at a meeting of the board of directors of the railway company held on the 26th day of April thereafter a resolution was adopted ratifying and approving said contract. It is nowhere contended that the railway company is not responsible for the making of this contract. It provided, in short, that the contractors should build 71 miles of road, and should receive $15,000 a mile in the first mortgage 5 per cent. gold coupon bonds of said railway company, and also capital stock to the amount of 51 per centum of the stock issued. These contractors allege that they employed a corps of engineers, and caused considerable work to be done on the proposed line of said railroad, but, on account of the depressed condition of the finances of the country, said firm

(12)

was unable to procure the funds necessary for the carrying into effect the said contract. Certain of the interveners in this case were employed by Bracy, Chapman & Lampson. The report of Special Master Bowman in the case at bar states that he had heard evidence of persons who have intervened in the case, and presented claims for work done in surveying and locating the line of the railroad under the contract of Bracy, Lampson & Chapman, and those claims which he considered as valid were designated as "Class A," and amounted to $574. The other persons who intervened furnished supplies to those who were operating under the Mineral Belt Construction Company's contract. The court declared a lien in behalf of the persons who rendered services under this contract, and allowed them to share equally with the persons who furnished supplies or contributed labor under the Mineral Belt Construction Company. In the order of Judge Kilgore of March 2, 1896, authorizing the contract to be made with the Mineral Belt Construction Company for the building of the Denison & Northern Railroad, it was provided that the holders of outstanding indebtedness against the company shall file and prove their claims before the master in chancery of the court, and that such indebtedness must be paid in full by the receiver, and that until payment is made such indebtedness shall be a lien upon the rights, franchises, and appurtenances of the railway company. It was in this order and by virtue of this order, procured by the representatives of the railway company, that the company became liable for these debts, and authorized a lien upon the assets of the company for their payment.

This court has given this case and all the proceedings of the Crockett case which appear in the record a very careful consideration. In reaching the conclusions stated above no injustice has been done the Denison & Northern Railway Company. The value of the betterments placed upon its railroad was estimated by three persons selected by the

court, one of whom was a civil engineer, one a railroad contractor or builder, and the third a practical business man. The exceptions filed to the report of the appraisers by the railway company did not embrace an exception to the effect that the valuation was unreasonable or excessive. We must assume, therefore, that the railway company conceded the correctness of the valuation of the improvements. The company, therefore, has been enriched to the extent of the improvements put upon it, which have been estimated at over $40,000. It has endeavored, by resisting this litigation, to avoid paying for the betterments which it has received. Its contention is inequitable, unjust, and unreasonable. Courts were established for the purpose of administering justice. The case at bar furnishes a striking illustration that the law furnishes a redress for every wrong, and that equity suffers no wrong without a remedy. As was stated by Lord Hardwicke in the case of Charitable Corp. vs Sutton, 2 Atk. 406: "The tribunals of this kingdom are wisely formed both of courts of law and equity, and so are the tribunals of most other nations; and for this reason there can be no injury, but there must be a remedy, in all or some of them." The tribunals of the United States are among those to which Lord Hardwicke referred. It is the chief glory of our institutions that in the constitutions and laws of the United States and of the several states which compose this Union there have been established judicial tribunals to which the humblest citizen may appeal with the confident assurance that all his rights will be secured. In this country, as well as in England, the equitable maxim, "Ubi jus ibi remedium," is not a mere legal fiction, nor is it even an "iridescent dream," but it is a living reality. In the case at bar justice and equity have been meted out to all persons concerned as far as it was possible to do so. There is no error in the record, and the judgment of the court below is therefore affirmed.

CLAYTON and THOMAS, JJ., concur.